$I C_4$

**RECEIVED**

ARCHER & GREINER, P.C.
1211 Avenue of the Americas
New York, New York 10036
Tel: (212) 682-4940
Allen G. Kadish[1]
Harrison H.D. Breakstone[1]
Email: akadish@archerlaw.com
        hbreakstone@archerlaw.com

DEC 29 2023 ᴏⱮⱮ

**THOMAS G. BRUTON**
**CLERK, U.S. DISTRICT COURT**

*Counsel for Allen D. Applbaum as Receiver*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Securities and Exchange Commission, | United States District Court District of Arizona Case No.: 3:23-bk-02470-DLR |
| Plaintiff, | |
| v. | Misc. Case No.: |
| Jonathan Larmore; ArciTerra Companies, LLC; ArciTerra Note Advisors II, LLC; ArciTerra Note Advisors III, LLC; ArciTerra Strategic Retail Advisors, LLC; and Cole Capital Funds, LLC, | 1:24-cv-00004 Judge Andrea R. Wood Magistrate Judge Maria Valdez RANDOM / Category 5 |
| Defendants, and | |
| Michelle Larmore; Marcia Larmore; CSL Investments, LLC; MML Investments, LLC; Spike Holdings, LLC; and JMMAL Investments, LLC, | |
| Relief Defendants. | |

## NOTICE OF FILING OF COMPLAINT
## AND ORDER APPOINTING RECEIVER
## PURSUANT TO 28 U.S.C. §754

PLEASE TAKE NOTICE that on December 21, 2023, Allen D. Applbaum was appointed

receiver in the captioned case over certain Receivership Assets,[2] which are assets owned and/or

---

[1] Limited appearance for the purpose of this Receiver's notice under 28 U.S.C. §754 to preserve rights in property located within this district.

[2] Capitalized, undefined terms are as in the Receivership Order.

controlled by one or more defendants and/or relief defendants in the following case: *United States Securities and Exchange Commission v. Jonathan Larmore, Securities and Exchange Commission, ArciTerra Companies, LLC; ArciTerra Note Advisors II, LLC; ArciTerra Note Advisors III, LLC; ArciTerra Strategic Retail Advisors, LLC; and Cole Capital Funds, LLC, and Michelle Larmore; Marcia Larmore; CSL Investments, LLC; MML Investments, LLC; Spike Holdings, LLC; and JMMAL Investments, LLC,* United States District Court, District of Arizona, Case No. 3:23-bk-02470-DLR.

PLEASE TAKE FURTHER NOTICE that pursuant to 28 U.S.C. §754, attached as Exhibit A is a true copy of the Complaint filed therein; attached as Exhibit B is a true copy of the *Order Appointing Temporary Receiver and Temporarily Freezing Assets and Imposing Litigation Injunction* [ECF No. 77] (the "Receivership Order") entered therein; and attached as Exhibit C is a true copy of the *Temporary Restraining Order* [ECF No. 78] entered therein.

Dated: December 27, 2023

ARCHER & GREINER, P.C.

By: _____

Allen G. Kadish
Harrison H.D. Breakstone
1211 Avenue of the Americas
New York, New York 10036
Tel: (212) 682-4940
Email: akadish@archerlaw.com
    hbreakstone@archerlaw.com

*Counsel for Allen D. Applbaum as Receiver*

228222107.v1

2

**EXHIBIT A**

Complaint

1 | Andrew Dean (NY Bar)
Monique C. Winkler (Cal. Bar No. 213031)
2 | John K. Han (Cal. Bar No. 208086)
hanjo@sec.gov
3 | Heather E. Marlow (Cal. Bar No. 215261)
marlowh@sec.gov
4 | Amanda L. Straub (NY Bar)
strauba@sec.gov
5 |

6 | 44 Montgomery Street, Suite 2800
San Francisco, California 94104
7 | Telephone: (415) 705-2500
Facsimile: (415) 705-2501
8 | Attorneys for Plaintiff

9

10

11 **IN THE UNITED STATES DISTRICT COURT**

12 **FOR THE DISTRICT OF ARIZONA**

13 | Securities and Exchange Commission, | Case No.:

14 | Plaintiff,

15 | v. | **COMPLAINT**

16 | Jonathan Larmore; ArciTerra Companies,
LLC; ArciTerra Note Advisors II, LLC;
17 | ArciTerra Note Advisors III, LLC;
ArciTerra Strategic Retail Advisors, LLC;
18 | and Cole Capital Funds, LLC,

19 | Defendants, and

20 | Michelle Larmore; Marcia Larmore; CSL
Investments, LLC; MML Investments, LLC;
21 | Spike Holdings, LLC; and JMMAL
Investments, LLC,

22 |

23 | Relief Defendants.

24

25 Plaintiff Securities and Exchange Commission ("SEC") alleges:

26 **SUMMARY OF THE ACTION**

27 1. From at least 2017 through the present, Defendant Jonathan Moynahan

28 Larmore ("Larmore") has siphoned tens of millions of dollars from investment funds

1   and entities related to ArciTerra Companies, LLC ("ArciTerra") for his personal

2   enrichment and other unauthorized uses.

3        2.      From at least 2006 to September 2023, Defendant Larmore was the Chief

4   Executive Officer ("CEO") of ArciTerra, manager of a complex of entities involved

5   with commercial real estate investment, development, and management. Beginning in

6   2006, Larmore and ArciTerra raised approximately $45 million from approximately

7   1045 investors for two private funds, ArciTerra Note Fund II, LLC ("Fund II") and

8   ArciTerra Note Fund III, LLC ("Fund III") (together, the "Funds"), to which Larmore

9   owed fiduciary duties as an investment adviser.

10       3.      But by at least January 2017, Larmore was engaged in a scheme by

11  which he misappropriated millions of dollars from the Funds' holdings by diverting it

12  to Defendant ArciTerra Strategic Retail Advisors, LLC ("ASR Advisor"), an entity

13  Larmore controls and owns with his mother, Relief Defendant Marcia Larmore.

14  Larmore used the ASR Advisor account as his multi-million-dollar slush fund, taking

15  money from the various entities he controlled—including from real estate holdings

16  owned by the Funds—to pay for other cash needs of his businesses, and to fund his

17  lavish lifestyle of private jets, yachts, and expensive residences.

18       4.      ArciTerra's own records establish that tens of millions of dollars—none

19  of which are legitimate fees, distributions, or compensation—have flowed through

20  ASR Advisor to Larmore, as well as to other entities owned by Larmore and his

21  family members.

22       5.      In or around September 2023, Larmore abdicated his direct control over

23  ArciTerra by nominally resigning as its "Manager," but retained his ability to

24  influence the management and sale of ArciTerra's assets by appointing his own agent

25  as one of the two new co-managers. The two new co-managers also serve as agents for

26  Larmore and his wife, respectively, in their pending divorce proceeding and serve in a

27  fiduciary capacity to them. However, the co-managers do not acknowledge any

28  fiduciary duty to ensure that Fund II and III assets are managed for the benefit of the

1 | Funds and their investors.

2      6.     After relinquishing his formal management duties for ArciTerra, Larmore
3 turned to a new scheme involving stock manipulation. In November 2023, Larmore,
4 using Defendant Cole Capital Funds, LLC ("Cole Capital"), an entity he had created
5 just a month earlier in October 2023, engaged in transactions aimed at manipulating
6 the price of the securities of WeWork, Inc., an unrelated company whose shares are
7 publicly traded over the NASDAQ National Markets under the symbol "WE." On
8 November 3, 2023, Larmore sought to have disseminated through a wire service a
9 press release riddled with false and misleading statements announcing a purportedly
10 imminent Cole Capital tender offer for WeWork shares, a transaction that Larmore did
11 not have the actual intent or ability to execute. Larmore mistimed how long it would
12 take to have the press release published, and it did not go public until 5:12 p.m. EDT.
13 Shortly after the press release was published, WeWork's stock price increased by
14 close to 150% in aftershours trading.

15      7.     Unbeknownst to the public, however, two days before dropping his press
16 release, Larmore had purchased a large quantity of out-of-the-money WeWork call
17 options that could have made Larmore hundreds of thousands to millions of dollars if
18 the price of WeWork stock had increased significantly before they expired. Because
19 he mistimed the press release, however, his options expired just over an hour before
20 the WeWork stock price spiked as a result of his manipulative conduct.

21      8.     Defendants and Relief Defendants have each been unjustly enriched, at
22 the expense of investors. The SEC brings this enforcement action to obtain emergency
23 relief from the Court pending final relief, including among other things: a temporary
24 restraining order and preliminary injunction enjoining Defendants from further
25 violations of the securities laws; asset freezes designed to stop further
26 misappropriation and dissipation of assets; an order appointing an equity receiver over
27 certain Defendants, Relief Defendants, and their affiliates; and related orders.

28

COMPLAINT                  3                    SEC v. LARMORE ET AL.
                                                         CASE No.     XXXX

1        JURISDICTION AND VENUE

2        9.      The SEC brings this action pursuant to Sections 21(d) and 21(e) of the

3    Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d) and 78u(e)]

4    and Sections 209(d) and 209(e) of the Investment Advisers Act of 1940 ("Advisers

5    Act") [15 U.S.C. §§ 80b-9(d) and 80b-9(e)].

6        10.     This Court has jurisdiction over this action pursuant to Section 27 of the

7    Exchange Act [15 U.S.C. § 78aa] and Sections 209(d), 209(e), and 214 of the

8    Advisers Act [15 U.S.C. §§ 80b-9(d), 80b-9(e), and 80b-14].

9        11.     Defendants, directly or indirectly, made use of the means and

10   instrumentalities of interstate commerce or of the mails in connection with the acts,

11   transactions, practices, and courses of business alleged in this complaint.

12       12.     Venue is proper in this District pursuant to Section 27(a) of the Exchange

13   Act [15 U.S.C. § 78aa(a)] and Section 214 of the Advisers Act [15 U.S.C. § 80b-14].

14   Acts, transactions, practices, and courses of business that form the basis for the

15   violations alleged in this complaint occurred in Arizona.

16       13.     Under Civil Local Rule 5.1(a), this civil action is appropriate for

17   assignment to the Phoenix Division, because a substantial part of the events or

18   omissions which give rise to the claims alleged herein occurred in Phoenix, and in

19   Maricopa County. In addition, Defendant ArciTerra's principal place of business until

20   recently was in Phoenix, Arizona.

21       DEFENDANTS

22       14.     **Defendant Jonathan Moynahan Larmore**, age 50, is the co-founder

23   and Chief Executive Officer ("CEO") of Defendant ArciTerra. Larmore has

24   residences in Arizona, Indiana, and Florida. Until September, Larmore fully controlled

25   ArciTerra, which is owned by Relief Defendant CSL Investments, LLC; Larmore is a

26   co-owner (with his wife) of CSL Investments, LLC. Through direct or indirect

27   interests, Larmore also owns or controls various other ArciTerra-related entities, as

28   well as numerous entities that are not related to the other entity Defendants. Larmore

COMPLAINT                                    4                    SEC V. LARMORE ET AL.
                                                                 CASE NO.      XXXX

1   is an investment adviser to the Funds.

2   15.   **Defendant ArciTerra Companies, LLC** (known as ArciTerra Group,

3   LLC until 2007) is an Arizona company that until approximately April 2023 had its

4   principal place of business in Phoenix, Arizona, through which it conducted real estate

5   investment, development, and management. It was established in 2005 by Larmore,

6   who fully controlled the company until recently. According to tax documents,

7   ArciTerra is owned 25% by Larmore through Relief Defendant CSL Investments,

8   LLC, which he owns with his wife, Relief Defendant Michelle Larmore, who also

9   owns 25% of ArciTerra, and 50% by his mother, Relief Defendant Marcia Larmore,

10  through an entity she owns. In or around April 2023, ArciTerra terminated its Arizona

11  operations and employees.

12  16.   **Defendant ArciTerra Note Advisors II, LLC** ("Fund II Advisors") is

13  organized under the laws of Arizona and is the investment adviser to ArciTerra Note

14  Fund II, LLC. Fund II Advisors is, in turn, managed by ArciTerra. Larmore controlled

15  and has an indirect ownership interest in Fund II Advisors.

16  17.   **Defendant ArciTerra Note Advisors III, LLC** ("Fund III Advisors") is

17  organized under the laws of Arizona and is the investment adviser to ArciTerra Note

18  Fund III, LLC. Fund III Advisors is, in turn, managed by ArciTerra. Larmore

19  controlled and has an indirect ownership interest in Fund III Advisors.

20  18.   **Defendant ArciTerra Strategic Retail Advisor, LLC** ("ASR Advisor")

21  is organized under the laws of Arizona with its principal place of business in Phoenix,

22  Arizona. ASR Advisor is owned in part by Larmore and in part by his mother, Relief

23  Defendant Marcia Larmore, and was until recently controlled by Larmore. ASR

24  Advisor owns bank accounts that Defendants used to move cash among various

25  ArciTerra entities. ASR Advisor also has invested in various commercial properties.

26  19.   **Defendant Cole Capital Funds, LLC** ("Cole Capital") was incorporated

27  by Larmore in Arizona on October 6, 2023. Its principal place of business is Phoenix,

28  Arizona. Larmore is the CEO of Cole Capital.

1    20.    Fund II Advisors, Fund III Advisors, and ASR Advisor have each agreed
2 to and executed tolling agreements with the SEC for the time period October 17, 2023
3 through January 17, 2024.

4                          RELIEF DEFENDANTS

5    21.    **Relief Defendant Michelle Ann Larmore**, age 50, is currently married
6 to Larmore and a resident of Phoenix, Arizona. She is identified in corporate and tax
7 records as owner or part owner of various ArciTerra-related entities, including as co-
8 owner with Larmore of Relief Defendant CSL Investments, LLC, which has
9 ownership in ArciTerra. Michelle Larmore filed legal separation proceedings against
10 Jonathan Larmore in March 2023 in Phoenix, Arizona, which are ongoing and referred
11 to below as "divorce proceedings."

12    22.    **Relief Defendant Marcia Moynahan Larmore**, age 77, is the mother of
13 Larmore and a resident of Arizona and Indiana, and she is identified in corporate
14 records as holding senior positions at various ArciTerra-related entities, including as
15 manager, president, and principal of an entity, Moynahan Investments, LLC, which
16 has ownership in ArciTerra.

17    23.    **Relief Defendant CSL Investments, LLC** ("CSL Investments") is
18 incorporated in Arizona with its principal place of business in Indiana. CSL
19 Investments is controlled by Larmore and owned by Larmore and his wife. CSL
20 Investments has a 50% ownership interest in ArciTerra.

21    24.    **Relief Defendant MML Investments, LLC** ("MML Investments") is
22 incorporated in Arizona, and is wholly owned and controlled by Relief Defendant
23 Marcia Larmore.

24    25.    **Relief Defendant JMMAL Investments, LLC** ("JMMAL
25 Investments") is incorporated and headquartered in Arizona, and is wholly or partly
26 owned, and wholly controlled, by Larmore.

27    26.    **Relief Defendant Spike Holdings, LLC** ("Spike Holdings") is
28 incorporated and headquartered in Arizona, and is wholly owned and controlled by

1 | Defendant Jonathan Larmore.

2 | FACTUAL ALLEGATIONS

3 | 27. Since its inception in 2005, ArciTerra has served as the manager for three
4 | ArciTerra real estate investment funds, multiple ArciTerra real estate investment trusts
5 | (REITs), and a number of limited liability companies, including some with outside
6 | investors, that own one or more commercial properties.

7 | 28. In October 2006, Larmore formed ArciTerra Note Fund II, LLC (referred
8 | to throughout this complaint as "Fund II"). Larmore designated Defendant Fund II
9 | Advisors the sole member of, and "advisor" to, Fund II. Fund II Advisors is in turn
10 | managed by ArciTerra, and is compensated through fees for its management of Fund
11 | II and its assets. Defendant Fund II Advisors is an investment adviser.

12 | 29. Under the Advisers Act, an investment adviser is a person who, for
13 | compensation, engages in the business of providing investment advice to others,
14 | including a private fund, about investing in securities. Advisers that manage portfolios
15 | for funds provide ongoing advice about buying, selling, and holding investments and,
16 | in an ongoing advisory relationship, monitor the investments and their alignment with
17 | the investment objectives and best interests of their fund clients. Investment advisers
18 | are fiduciaries to their clients, including fund clients.

19 | 30. Larmore, who controls Defendants ArciTerra and Fund II Advisors, and
20 | is compensated for this role, also acts or has acted as an investment adviser to Fund II.

21 | 31. In 2006 and 2007, Fund II raised a total of approximately $20 million
22 | from approximately 466 investors by issuing secured notes that bear an interest rate of
23 | 8.25% per annum. Fund II used $20 million in proceeds of the offering of secured
24 | notes to purchase, directly or through wholly owned intermediaries, various real-
25 | estate-related assets, including (i) limited partnership interests in ArciTerra National
26 | REIT LP ("National REIT"), (ii) limited partnership interests in ATG REIT RSC, LP
27 | ("ATG REIT"), (iii) LLC interests in Glen Rosa 32, LLC ("Glen Rosa"), holding
28 | company of a nursing-home property in Phoenix, Arizona, and (iv) LLC interests in

1  ArciTerra Vermont, which holds a commercial property in Indianapolis, Indiana.
2  Some of these interests, including the limited partnership interests in National REIT,
3  are securities.

4      32.   In February 2008, Larmore formed ArciTerra Note Fund III, LLC ("Fund
5  III") and designated Fund III Advisors as the sole member of, and "advisor" to, Fund
6  III. Fund III Advisors, like Fund II Advisors, is also managed by ArciTerra, is an
7  investment adviser to Fund III, and is similarly compensated through fees for its
8  management.

9      33.   Larmore, who controls Defendants ArciTerra and Fund III Advisors, and
10 is compensated for this role, also acts or has acted as an investment adviser to Fund
11 III.

12     34.   In 2008 and 2009, Fund III raised approximately $25 million from
13 approximately 579 investors by issuing secured notes that bear an interest rate of
14 9.25% per annum. Fund III used proceeds of the $25 million note offering to
15 purchase, directly or through wholly owned intermediaries, various real-estate-related
16 assets, including (i) limited partnership interests in National REIT, (ii) limited
17 partnership shares in ATG REIT, (iii) LLC interests in Glen Rosa, and (iv) preferred
18 stock in a real-estate enterprise managed by a third party held through a wholly owned
19 entity called ArciTerra NS Investment Co. ("ArciTerra NS"). Some of these interests,
20 including the limited partnership interests in National REIT and preferred stock held
21 via ArciTerra NS, are securities.

22     35.   Fund II and Fund III are distinct investment vehicles, with different
23 investors from each other and from other ArciTerra-related entities. They also have
24 their own, distinct investment holdings and expected revenues based on their
25 underlying investments.

26              **Larmore Misappropriates Money from the Funds' Assets**

27     36.   Beginning no later than January 1, 2017, through at least June 2023 (the
28 most recent period for which records are available), Defendants Larmore, ArciTerra,

COMPLAINT                                8                    SEC V. LARMORE ET AL.
                                                             CASE NO.      XXXX

1 Fund II Advisors, Fund III Advisors, and ASR Advisor commingled cash transferred
2 from Fund II and Fund III assets with other cash in bank accounts owned by other
3 ArciTerra entities, without regard for the fund or investor pool to which the cash
4 belonged.

5     37.    During this same time period, Larmore misappropriated at least $17
6 million from those commingled assets through payments to himself or entities he or
7 his family own, including to pay for his family's personal credit card bills.

8     38.    Larmore diverted money from the Funds by taking advantage of his
9 control over ArciTerra and its related entities. He directed ArciTerra's personnel to
10 transfer a total of at least $35 million, via various intermediary entities, from bank
11 accounts associated with holdings of the Funds ("Fund Holding Accounts") to the
12 account in the name of Defendant ASR Advisor (which is owned by Larmore and his
13 mother, Relief Defendant Marcia Larmore).

14     39.    In particular, during this time period, Larmore directed ArciTerra
15 personnel to transfer a total of approximately $12.5 million from Glen Rosa, and
16 approximately $22.5 million from ATG REIT, to Defendant ASR Advisor. Funds II
17 and III jointly own both Glen Rosa and ATG REIT.

18     40.    During this time period, at Larmore's direction, ArciTerra staff routinely
19 transferred cash from Fund Holding Accounts, and accounts owned by or associated
20 with other ArciTerra investment vehicles, into ASR Advisor's account. They did so to
21 facilitate cash needs, on an ad hoc basis, of any ArciTerra investment vehicles without
22 regard to any relationship between the source of the cash used and the intended
23 beneficiary of the cash used, as well as to pay Larmore's personal expenses. These
24 cash transfers were not legitimate fees, distributions, or compensation to Larmore or
25 entities owned by Larmore and his family. The amounts taken from Glen Rosa and
26 ATG REIT were commingled with other money in ASR Advisor's account and
27 misused in this manner.

28     41.    ArciTerra personnel recorded these cash transfers in ArciTerra's

1 | accounting records, and indicated in those records which entities or accounts the
2 | resulting debts were "due from" and "due to."

3 |     42.     Fund II and Fund III's use of proceeds disclosures to investors did not
4 | permit Larmore, ArciTerra, or the Fund Advisors to transfer cash out of the Fund
5 | Holding Accounts without creating formal evidence of an actual loan, or other
6 | substantiated debt, and without identifying the enforceable repayment terms, security
7 | interests, interest payments, or other terms that would evidence an economic benefit to
8 | the Funds. The Funds' written disclosures certainly did not authorize Larmore to use
9 | its monies for his personal expenses, and as a fiduciary to the Funds such use would
10 | not have been permissible.

11 |     43.     Among the many inappropriate diversions of cash to Larmore's personal
12 | use were transfers made to pay for his wife's (Relief Defendant Michelle Larmore)
13 | and his children's personal credit card bills. Larmore essentially treated the ASR
14 | Advisor bank account as his own personal bank account to fund his lavish lifestyle of
15 | private jets, yachts, high-end cars, and expensive residences. ArciTerra's staff
16 | recorded the payments for Larmore's personal expenses as "due from" his personal
17 | account and the account of his personal entity, JMMAL Investments.

18 |     44.     As of December 31, 2022, Larmore had diverted over $17 million from
19 | ArciTerra entities, through ASR Advisor, to his personal account and the account of
20 | JMMAL Investments. Larmore has not repaid these cash transfers.

21 |     45.     Larmore has depleted ASR Advisor's account, making it impossible for
22 | ASR Advisor to return the millions of dollars "due to" the Fund Holding Accounts. As
23 | of June 30, 2023, ArciTerra's books reflected cash transfers to ASR Advisor totaling
24 | approximately $53 million from various ArciTerra-related entities and investment
25 | vehicles (some owned by other outside investors). This amount includes
26 | approximately $35 million that was transferred out of the Fund Holding Accounts and
27 | which ArciTerra describes as "due from" ASR Advisor to accounts associated with
28 | Fund II and Fund III assets.

1      46.    Amounts in the ASR Advisor account that were not ultimately transferred
2 to Larmore and his family were utilized for the cash needs of various ArciTerra-
3 affiliated entities, without regard to whether the cash was taken from holdings owned
4 by entities with outside investors.

5      47.    Ultimately, nearly all cash transferred to ASR Advisor has been
6 dissipated. As of October 4, 2023, according to ArciTerra, ASR Advisor had less than
7 $500 remaining in its bank account.

8                 **Larmore Leaves ArciTerra and the Funds in Turmoil**

9      48.    From 2019 to the present, most of the ArciTerra-related investment
10 vehicles and entities had ceased making payments to investors. Furthermore, the cash
11 transfers at times deprived the companies in which Fund II and Fund III had invested
12 that own real properties of the ability to sustain normal operations, which negatively
13 impacted the value of the properties themselves by depriving them of money needed
14 for repairs and maintenance.

15      49.    During the past year, Larmore has become increasingly volatile, and his
16 actions suggest that he is desperate for cash. In April 2023, Larmore fired all
17 ArciTerra employees in Phoenix, and he shuttered ArciTerra's office, leaving few or
18 no employees to conduct ArciTerra's business.

19      50.    In April 2023, Larmore sent an email to a large group of people, with the
20 subject line: "The Perfect Storm Sale." In the email, Larmore stated that he wished to
21 sell off all the assets in ArciTerra's portfolio, as well as everything he personally
22 owned, including his family's homes, cars, boats, artwork, and jewelry, in seventy-
23 five days. The ArciTerra portfolio assets would include holdings and real property
24 held by Fund II and Fund III, as well as assets held by other ArciTerra-related
25 investment vehicles. Larmore stated that he wished "to shed the baggage of my past
26 and start fresh" and that he needed to liquidate all of his business and personal assets
27 to "finish dividing assets with my wife" who had filed a divorce proceeding the
28 previous month.

51.   In July 2023, Larmore agreed on behalf of ArciTerra to hire a consultant (the "Consultant") who was tasked with liquidating all ArciTerra-related assets as quickly as possible. The Consultant's scope of duties includes selling all assets held by Fund II, Fund III, and other ArciTerra investment vehicles.

52.   In August 2023, under the terms of an agreement filed in the Larmore's Arizona divorce proceeding, Larmore selected the Consultant, and Michelle Larmore selected ArciTerra's former Chief Operating Officer ("former COO"), to act as their respective agents in the disposition of ArciTerra assets for purposes of division of the marital estate. However, Larmore and his wife may continue to advise their agents on the management of all properties and accounts.

53.   In September 2023, Larmore formally resigned from his management role at ArciTerra, and the Consultant and the former COO were appointed to serve as co-managers. They are each paid a commission for the sale of any real properties, and are additionally paid a flat fee of $50,000 a month and a $100,000 quarterly bonus. Their compensation provides them with additional incentive to pursue the interests of the people who appointed them, Larmore and his wife, and not the interests of the Funds.

54.   Neither co-manager acknowledges a role as investment adviser or fiduciary to the Funds or any other ArciTerra investment vehicles with outside investors. Their sole purpose appears to be to liquidate assets, including Fund II and Fund III assets, to benefit Larmore and his wife. Larmore's abandonment of ArciTerra, his actions to liquidate assets, and his failure to put in place an investment adviser or fiduciary to the Funds are violations of his fiduciary duties.

### Larmore Manipulates WeWork Stock

55.   In early October 2023, after relinquishing direct access to ArciTerra's coffers, and aware he was being investigated by SEC staff, Larmore formed Defendant Cole Capital in the State of Arizona. Larmore listed with the Arizona Secretary of State the address of Cole Capital as a shared office space area hosted by

1  the firm WeWork, in Phoenix, Arizona. Also at that time, Larmore launched a website
2  for Cole Capital, where Larmore (omitting his first name, as Moynahan Larmore) was
3  listed as the CEO.

4      56.    On or about November 1 and November 2, 2023, Larmore purchased a
5  total of 72,846 call option contracts on the common stock of the publicly-traded
6  company WeWork, the common stock of which is sold under the ticker symbol "WE"
7  on the NASDAQ National Market, for $0.03 to $0.15 per contract. Call options give
8  the purchaser the right, but not the obligation, to buy the underlying security for the
9  price stated in the option (the "strike price") on or before the expiration date identified
10  in the option; the call option contracts in question would have given Larmore the right
11  to acquire 7,284,600 shares of WeWork common stock before they expired. Also on
12  November 1 and November 2, Larmore bought 343,641 shares of WeWork stock.

13      57.    Larmore purchased very short-term call options. The expiration date for
14  the vast majority of the WeWork call options was November 3, 2023, at 4:00 p.m.
15  EDT. A smaller portion had an expiration date of November 10, 2023, at 4:00 p.m.
16  EDT.

17      58.    Larmore's options were also significantly "out-of-the-money." Call
18  options are considered "out-of-the-money" when the strike price of the option is
19  higher than the current trading price of the underlying security. For instance,
20  WeWork's common stock closed on November 2, 2023 at a price of $1.15 per share,
21  and at the close of the following day, November 3, 2023, the price was $0.84 per
22  share. In contrast, the strike prices for the WeWork call options Larmore purchased
23  ranged from $2 to $5. Having purchased the out-of-the money call options for pennies
24  per contract, Larmore stood to make substantial gains if the stock price rose above the
25  strike price of some or all of the options.

26      59.    On the morning of November 3, 2023, Larmore sent an email to an SEC
27  mailbox from an email address at the Cole Capital website. The email attached a
28  document that Larmore was seeking to file publicly with the SEC, identified as a

1 "Schedule TO." A Schedule TO is a filing required to be made with the SEC by a

2 person who intends to make a "tender offer" for securities registered under the

3 Securities Exchange Act of 1934. A tender offer is a proposal by a person to buy all

4 (or most) of the shares of a publicly traded company for a stated price by a specified

5 date.

6     60.    In the document identified as a Schedule TO, attached to the email to the

7 SEC from the Cole Capital address, Larmore included the text of a letter that Larmore

8 indicated he had sent to WeWork's CEO and its Board of Directors that morning,

9 which stated, in part:

10     We believe that it is in the best interest of WeWork to support our
    acquisition of 51% of all the outstanding shares owned by minority
11     shareholders at a price of $9.00 per share and provide Cole with proper
    representation on the company board.
12

    We have received feedback from City National Bank and JP Morgan
13     regarding the financing for this acquisition and expect to select a lender and
    have a financing commitment prior to execution of a definitive agreement.
14

    We have consulted with God, legal, financial and other advisors to assist us
15     with this transaction. We stand ready to proceed timely.

16     61.    The $9.00 per share price contained in the letter represented a premium

17 of more than $7.89 over WeWork's closing price of $1.11 per share on November 2,

18 2023.

19     62.    On November 3, at 5:12 p.m. EDT, a Cole Capital press release was

20 disseminated through a wire service and picked up by several media sites. Larmore

21 arranged to send out the release through the wire service, and he paid for its

22 publication. Larmore had submitted the release to the service well before the close of

23 trading hours that day, but the service had rejected it at least once for formatting issues

24 or other irregularities.

25     63.    The release was titled "A Proposal by Cole Capital Funds Seeks to

26 Acquire 51% of all minority ownership shares of WeWork, Inc. for $9.00 per share in

27 Cash." The press release further stated that Cole Capital had sent a letter to the

28 WeWork Board of Directors, reiterating the same statement quoted above from the

1  Schedule TO attached to Larmore's email to the SEC.

2      64.    Although at the close of market trading (4:00 p.m. EDT) on November 3,
3  2023, WeWork's stock price closed at $0.83 per share, immediately after the press
4  release was published, the share price of WeWork jumped in afterhours trading to
5  $1.45 per share, and reached a high that evening of $2.14 per share, at 6:31 p.m. EDT.
6  Most websites that had posted the press release removed it by the next morning. The
7  stock price closed at $1.18 at the end of afterhours trading.

8      65.    Larmore did not exercise his November 3 call options because they had
9  expired before the press release was published, and he did not exercise his November
10  10 call options because the stock price did not exceed the strike price. Indeed, on
11  Monday, November 6, 2023, WeWork filed for Chapter 11 bankruptcy protection.

12      66.    Larmore's press release did not reflect a bona fide offer for WeWork
13  stock. Larmore and Cole Capital did not have sufficient liquid capital to execute Cole
14  Capital's proposed tender offer. Additionally, Larmore and Cole Capital did not have,
15  and did not have any reasonable prospects for securing, the financing required for
16  such a tender offer. Rather, Larmore's apparent purpose in the scheme was simply to
17  manipulate WeWork's stock price, in an attempt to profit from the change in price by
18  trading in WeWork options.

19                          **Relief Defendants**

20      67.    Relief Defendants CSL Investments, MML Investments, and JMMAL
21  Investments received money from other ArciTerra-related entities, to which they were
22  not entitled and had no legitimate claim. Those funds were commingled with money
23  from other ArciTerra-related entities, and then paid from the ASR Advisor bank
24  account to Relief Defendants CSL Investments, MML Investments, and JMMAL
25  Investments. ArciTerra's accounting records show that, as of December 31, 2022,
26  almost $9.8 million is "due from" CSL Investments to ASR Advisor, almost $4.9
27  million is "due from" MML Investments to ASR Advisor, and over $11.5 million is
28  "due from" JMMAL Investments to ASR Advisor.

1    68.    Relief Defendant Spike Holdings also received money from other
2  ArciTerra-related entities to which it is not entitled and for which it has no legitimate
3  claim, including direct transfers from a property-holding entity belonging to Fund II
4  and Fund III.

5    69.    Relief Defendant Michelle Larmore received money to which she was
6  not entitled and over which she has no legitimate claim. Michelle Larmore received
7  some such money through ArciTerra's payment of her personal expenses such as
8  credit card bills, as well as through her partial ownership of CSL Investments.

9    70.    Relief Defendant Marcia Larmore received money to which she was not
10  entitled and over which she has no legitimate claim. Marcia Larmore received some
11  such money through her ownership of MML Investments and partial ownership of
12  other ArciTerra-related entities.

13                    FIRST CLAIM FOR RELIEF

14    *Violations of Sections 206(1) and 206(2) of the Advisers Act by Defendants*
15            *Larmore, Fund II Advisors, and Fund III Advisors*

16    71.    The SEC realleges and incorporates by reference the above paragraphs 1
17  through 70.

18    72.    Defendants Larmore, Fund II Advisors, and Fund III Advisors are
19  investment advisers as defined by Section 202(a)(11) of the Advisers Act [15 U.S.C. §
20  80b-2(a)(11)].

21    73.    By engaging in the conduct described above, Defendants Larmore, Fund
22  II Advisors, and Fund III Advisors, while acting as investment advisers, directly or
23  indirectly, by use of the mails or means and instrumentalities of interstate commerce:
24  (a) acting with scienter, employed or are employing devices, schemes or artifices to
25  defraud clients or prospective clients; and (b) negligently or knowingly engaged in or
26  are engaging in transactions, practices, or courses of business which operated as a
27  fraud or deceit upon clients or prospective clients.

28    74.    By reason of the foregoing, Defendants Larmore, Fund II Advisors, and

1 Fund III Advisors violated, and unless restrained and enjoined, will continue to
2 violate, Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and
3 80b-6(2)].

4                                    SECOND CLAIM FOR RELIEF

5                      *Aiding and Abetting Violations of Sections 206(1) and 206(2)*

6                            *of the Advisers Act by Defendant Larmore*

7       75.     The SEC realleges and incorporates by reference the above paragraphs 1
8 through 70.

9       76.     Defendants Fund II Advisors and Fund III Advisors violated Sections
10 206(1) and (2) of the Advisers Act [15 U.S.C. § 80b-6(1) and (2)].

11      77.     By engaging in the conduct described above, Defendant Larmore aided
12 and abetted Fund II Advisors' and Fund III Advisors' violations of Sections 206(1)
13 and (2) of the Advisers Act by knowingly or recklessly providing substantial
14 assistance to Defendants Fund II Advisors and Fund III Advisors, who, while acting
15 as investment advisers, directly or indirectly, by the use of the mails or any means or
16 instrumentality of interstate commerce, (a) acting with scienter, employed or are
17 employing devices, schemes or artifices to defraud clients or prospective clients; and
18 (b) negligently or knowingly engaged in or are engaging in transactions, practices, or
19 courses of business which operated as a fraud or deceit upon clients or prospective
20 clients.

21      78.     By reason of the foregoing, Defendant Larmore, directly or indirectly,
22 aided and abetted and is liable for violations of, and unless restrained and enjoined,
23 will continue to violate, Sections 206(1) and (2) of the Advisers Act [15 U.S.C. § 80b-
24 6(1) and (2)].

25                                    THIRD CLAIM FOR RELIEF

26                      *Aiding and Abetting Violations of Sections 206(1) and 206(2)*

27                  *of the Advisers Act by Defendants ArciTerra and ASR Advisor*

28      79.     The SEC realleges and incorporates by reference the above paragraphs 1

1  through 70.

2      80.     Defendants Larmore, Fund II Advisors, Fund III Advisors violated
3  Sections 206(1) and (2) of the Advisers Act [15 U.S.C. § 80b-6(1) and (2)].

4      81.     By engaging in the conduct described above, Defendants ArciTerra and
5  ASR Advisor aided and abetted Larmore's, Fund II Advisors', and Fund III Advisors'
6  violations of Sections 206(1) and (2) of the Advisers Act by knowingly or recklessly
7  providing substantial assistance to Defendants Larmore, Fund II Advisors, and Fund
8  III Advisors, who, while acting as investment advisers, directly or indirectly, by the
9  use of the mails or any means or instrumentality of interstate commerce, (a) acting
10 with scienter, employed or are employing devices, schemes or artifices to defraud
11 clients or prospective clients; and (b) negligently or knowingly engaged in or are
12 engaging in transactions, practices, or courses of business which operated as a fraud or
13 deceit upon clients or prospective clients.

14     82.     By reason of the foregoing, Defendants ArciTerra and ASR Advisor,
15 directly or indirectly, aided and abetted and are liable for violations of, and unless
16 restrained and enjoined, will continue to violate, Sections 206(1) and (2) of the
17 Advisers Act [15 U.S.C. § 80b-6(1) and (2)].

18                        FOURTH CLAIM FOR RELIEF

19     *Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder by*
20                  *Defendants Larmore and Cole Capital*

21     83.     The SEC realleges and incorporates by reference the above paragraphs 1
22 through 70.

23     84.     By engaging in the conduct described above, Defendants Larmore and
24 Cole Capital each, directly or indirectly, in connection with the purchase or sale of
25 securities, by the use of means or instrumentalities of interstate commerce, or the
26 mails, with scienter:

27          (a)     Employed devices, schemes, or artifices to defraud;

28          (b)     Made untrue statements of material fact or omitted to state material

1       facts necessary in order to make the statements made, in the light

2       of the circumstances under which they were made, not misleading;

3       and

4       (c)     Engaged in acts, practices, or courses of business which operated

5       or would operate as a fraud or deceit upon other persons, including

6       purchasers and sellers of securities.

7       85.     By reason of the foregoing, Defendants Larmore and Cole Capital

8  violated, and unless restrained and enjoined will continue to violate, Section 10(b) of

9  the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R.

10  § 240.10b-5].

11                          FIFTH CLAIM FOR RELIEF

12       *Violations of Section 14(e) of the Exchange Act and Rule 14e-8 Thereunder by*

13                          *Defendants Larmore and Cole Capital*

14       86.     The SEC realleges and incorporates by reference the above paragraphs 1

15  through 70.

16       87.     By engaging in the conduct described above, Defendants Larmore and

17  Cole Capital (1) each made untrue statements of a material fact and each omitted to

18  state material facts necessary in order to make the statements made, in the light of the

19  circumstances under which they were made, not misleading; and (2) each engaged in

20  fraudulent, deceptive, or manipulative acts or practices, in connection with a tender

21  offer.

22       88.     By engaging in the conduct described above, Defendants Larmore and

23  Cole Capital, in connection with a tender offer, engaged in fraudulent, deceptive, or

24  manipulative acts or practices, by publicly announcing that Cole Capital planned to

25  make a tender offer that has not yet been commenced, where Defendants Larmore and

26  Cole Capital (a) made the announcement of a potential tender offer without the

27  intention to commence the offer within a reasonable time and complete the offer; (b)

28  intended, directly or indirectly, for the announcement to manipulate the market price

1   of the stock of the bidder or subject company; and (c) did not have the reasonable

2   belief that Cole Capital would have the means to purchase securities to complete the

3   offer.

4        89.   By reason of the foregoing, Defendants Larmore and Cole Capital

5   violated, and unless restrained and enjoined will continue to violate, Section 14(e) of

6   the Exchange Act [15 U.S.C. § 78n(e)] and Rule 14e-8 [17 C.F.R. § 240.14e-8]

7   promulgated thereunder.

8                               PRAYER FOR RELIEF

9       WHEREFORE, the SEC respectfully requests that this Court grant the

10   following relief:

11                                  I.

12       An order temporarily and preliminarily, through final judgments, restraining

13   and enjoining Defendants Larmore, Fund II Advisors, Fund III Advisors, ArciTerra

14   and ASR Advisor from directly or indirectly violating Sections 206(1) and (2) of the

15   Advisers Act [15 U.S.C. § 80b-6(1) and (2)]; and temporarily and preliminarily,

16   through final judgments, restraining and enjoining Larmore and Cole Capital from

17   directly or indirectly violating Sections 10(b) and 14(e) of the Exchange Act

18   [15 U.S.C. § 78j(b) and 78n(e)] and Rules 10b-5 and 14e-8 [17 C.F.R. §§ 240.10b-5

19   and 240.14e-8].

20                                II.

21       An order temporarily and preliminarily, through final judgments, appointing a

22   receiver over Defendants Fund II Advisors, Fund III Advisors, ArciTerra, ASR

23   Advisor, and Relief Defendants CSL Investments, MML Investments, Spike

24   Holdings, and JMMAL Investments (collectively, "Receivership Entities"), and any

25   known or unknown affiliates of the Receivership Entities.

26                                III.

27       An order temporarily and preliminarily, through final judgments, staying all

28   pending cases and enjoining the filing of any new bankruptcy, foreclosure, or

1  receivership actions by or against ArciTerra or any other Receivership Entity or any
2  receivership assets, wherever located.

3                                              IV.

4       An order temporarily and preliminarily, through final judgments, freezing the
5  assets of Defendants Larmore, Fund II Advisors, Fund III Advisors, ArciTerra, ASR
6  Advisor, Cole Capital, and Relief Defendants CSL Investments, MML Investments,
7  Spike Holdings, JMMAL Investments, and their known or unknown affiliates.

8                                              V.

9       An order temporarily and preliminarily, through final judgments, prohibiting
10 the Defendants and Relief Defendants from the acceptance, deposit, or disbursement
11 of additional fund monies or investor funds, or causing any assets or funds of the
12 Defendants or Relief Defendants to be withdrawn, transferred, pledged, or
13 encumbered.

14                                             VI.

15      An order requiring a verified accounting of assets by Defendants Larmore,
16 Fund II Advisors, Fund III Advisors, ArciTerra, ASR Advisor, Cole Capital, and
17 Relief Defendants Michelle Larmore, Marcia Larmore, CSL Investments, MML
18 Investments, Spike Holdings, JMMAL Investments, and their known and unknown
19 affiliates.

20                                            VII.

21      An order temporarily and preliminarily, through the Court's decision on the
22 SEC's application for a preliminary injunction, permitting expedited discovery.

23                                           VIII.

24      An order temporarily, and preliminarily through final judgments, restraining
25 and enjoining Defendants, Relief Defendants, and any person or entity acting at their
26 direction or on their behalf, from destroying, altering, concealing, or otherwise
27 interfering with the access of the SEC to relevant documents, books, and records.

28

### IX.

Final Judgments permanently restraining and enjoining Defendants Larmore, Fund II Advisors, Fund III Advisors, ArciTerra and ASR Advisor from directly or indirectly violating Sections 206(1) and (2) of the Advisers Act [15 U.S.C. § 80b-6(1) and (2)]; and permanently restraining and enjoining Larmore and Cole Capital from directly or indirectly violating Sections 10(b) and 14(e) of the Exchange Act [15 U.S.C. § 78j(b) and 78n(e)] and Rules 10b-5 and 14e-8 [17 C.F.R. §§ 240.10b-5 and 240.14e-8].

### X.

Final judgments requiring each of the Defendants and Relief Defendants to disgorge the ill-gotten gains or unjust enrichment each of them obtained or derived from such violations, and an order requiring each of the Defendants to pay a civil monetary penalty pursuant to Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)(3)] and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

### XI.

Final judgments, pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], prohibiting Defendant Larmore from serving as an officer or director of any entity having a class of securities registered with the SEC pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. §78o(d)].

### XII.

That the Court retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

XIII.

That the Court grant such other and further relief as this Court may determine to be just and necessary.

Dated:  November 28, 2023

Respectfully submitted,

*/s/ John K. Han*
John K. Han
Heather E. Marlow
Amanda L. Straub
Attorneys for Plaintiff
SECURITIES AND EXCHANGE
COMMISSION

COMPLAINT

23

SEC V. LARMORE ET AL.
CASE NO.        XXXX

Case 2:23-cv-02470-DLR  Document 1-1  Filed 11/28/23  Page 1 of 2
UNITED STATES DISTRICT COURT DISTRICT OF ARIZONA

**Civil Cover Sheet**

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the District of Arizona.

**The completed cover sheet must be printed directly to PDF and filed as an attachment to the Complaint or Notice of Removal.**

Plaintiff(s):    SECURITIES AND EXCHANGE COMMISSION . ;

Defendant(s):    Jonathan Larmore . ; ArciTerra Companies, LLC . ; ArciTerra Note Advisors II, LLC . ; ArciTerra Note Advisors III, LLC . ; ArciTerra Strategic Retail Advisors, LLC . ; Cole Capital Funds, LLC . ; Michelle Larmore (Relief Defendant) . ; Marcia Larmore (Relief Defendant) . ; CSL Investments, LLC (Relief Defendant) . ; MML Investments, LLC (Relief Defendant) . ; Spike Holdings, LLC (Relief Defendant) . ; JMMAL Investments, LLC (Relief Defendant) . ;

County of Residence: Maricopa

County of Residence: Maricopa

County Where Claim For Relief Arose: Maricopa

Plaintiff's Atty(s):

Defendant's Atty(s):

**Andrew Dean (NY Bar)** ,
Securities and Exchange Commission
100 Pearl Street, Suite 20-100
New York, New York 10004-2616
(415) 705-2500

**Monique C. Winkler (Cal. Bar No. 212031)** ,
Securities and Exchange Commission
44 Montgomery Street, Suite 2800
San Francisco, California 94104
(415) 705-2500

**John K. Han (Cal. Bar No. 208086)** ,
Securities and Exchange Commission
44 Montgomery Street, Suite 2800
San Francisco, California 94104
(415) 705-2500

**Heather E. Marlow (Cal. Bar No. 215261)** ,
Securities and Exchange Commission
44 Montgomery Street, Suite 2800
San Francisco, California 94104
(415) 705-2500

**Amanda L. Straub (NY Bar)** ,
Securities and Exchange Commission
44 Montgomery Street, Suite 2800

San Francisco, California 94104
(415) 705-2500

Case 2:23-cv-02470-DLR  Document 1-1  Filed 11/28/23  Page 2 of 2

**IFP REQUESTED**

**REMOVAL FROM COUNTY, CASE #**

II. Basis of Jurisdiction:   1. U.S. Government Plaintiff

III. Citizenship of Principal Parties(Diversity Cases Only)

Plaintiff:-   N/A

Defendant:-   N/A

IV. Origin   1. Original Proceeding
V. Nature of Suit   850 Securities/Commodities/Exchange

VI.Cause of Action:   15 U.S.C. §§ 78u(d) and 78u(e); 15 U.S.C. §§ 80b-9(d) and 80b-9(e); 15 U.S.C. § 78aa; 15 U.S.C. § 80b-9(d) and other federal statutes and regulations

VII. Requested in Complaint

Class Action   No

Dollar Demand:

Jury Demand:   No

VIII. This case **is not related** to another case

**Signature:** /s John K. Han

**Date:** 11/28/2023

If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your browser and change it. Once correct, save this form as a PDF and include it as an attachment to your case opening documents.

Printed: 01/2016

**EXHIBIT B**

Receivership Order

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States Securities and Exchange Commission,<br><br>Plaintiff,<br><br>v.<br><br>Jonathan Larmore, et al.,<br><br>Defendants. | No. CV-23-02470-PHX-DLR<br><br>**ORDER APPOINTING TEMPORARY RECEIVER AND TEMPORARILY FREEZING ASSETS AND IMPOSING LITIGATION INJUNCTION** |

WHEREAS this matter has come before this Court upon motion of the Plaintiff U.S. Securities and Exchange Commission ("SEC" or "Plaintiff") to appoint a receiver in the above-captioned action to protect investors in investment funds (the "ArciTerra Funds") owned and/or controlled by one or more of Defendants Jonathan M. Larmore ("Larmore"), ArciTerra Companies, LLC ("ArciTerra"), ArciTerra Note Advisors II, LLC ("Fund II Advisors"), ArciTerra Note Advisors III, LLC ("Fund III Advisors"), and ArciTerra Strategic Retail Advisor, LLC ("ASR Advisor") (collectively, and excluding Larmore, the "Receivership Defendants"); and

WHEREAS the Court finds that, based on the record in these proceedings, the appointment of a receiver in this action is necessary and appropriate for the purposes of marshaling and preserving all assets of the ArciTerra Funds, the Receivership Defendants, and the known and unknown Affiliates of the Receivership Defendants (collectively, the "Receivership Entities"),[1] and to preserve those assets of the

---

[1] For purposes of this Order, the term "Affiliate" has the meaning ascribed to it in Rule 405 of the Securities Act of 1933, 17 C.F.R. § 230.405 ("An affiliate of, or person

1   Receiverghip Entities held in constructive trust for the Receivership Entities that were
2   fraudulently or improperly transferred out of the Receivership Entities to CSL
3   Investments, LLC ("CSL Investments"), MML Investments, LLC ("MML Investments"),
4   Spike Holdings, LLC ("Spike Holdings"), and JMMAL Investments, LLC ("JMMAL
5   Investments") (collectively, the "Entity Relief Defendants"); and/or  may otherwise be
6   includable as assets of the estates of the Receivership Entities (collectively, the
7   "Recoverable Assets");

8       WHEREAS this Court has subject matter jurisdiction over this action and personal
9   jurisdiction over the Receivership Entities, and venue properly lies in this district; and

10      WHEREAS, Defendants and Relief Defendants have consented to entry of this
11  Order pending the Court's determination of the SEC's motion for a preliminary
12  injunction.

13      NOW  THEREFORE,  IT  IS  HEREBY  ORDERED,  ADJUDGED  AND
14  DECREED THAT:

15      I. Exclusive Jurisdiction

16      1. This Court hereby takes exclusive jurisdiction and possession of all of the
17  assets of the Receivership Entities, together with all proceeds thereof (collectively, the
18  "Receivership Assets") of whatever kind, wherever situated, or whenever obtained.

19      II. Appointment of Receiver

20      2. Until further Order of this Court, Allen Applbaum is hereby appointed to
21  serve without bond as receiver (the "Receiver") for the receivership estate of the
22  Receivership Entities (the "Receivership Estate"), including the Receivership Assets, to,
23  among other duties and rights set forth in this Order and available under applicable law
24  and without limiting any other provisions of this Order, (a) preserve the status quo to
25  enable the Receiver to perform the duties specified hereunder; (b) ascertain the financial
26

27  affiliated with, a specified person, is a person that directly, or indirectly through one or
28  more intermediaries, controls or is controlled by, or is under common control with, the
    person specified."). A non-exhaustive list of Receivership Entities is attached as Exhibit
    A to this Order.

1  condition of the Receivership Entities and Receivership Assets; (c) oversee and manage,
2  consistent with the relevant governing documents and applicable law, the Receivership
3  Entities and Receivership Assets; (d) prevent the encumbrance or disposal of the
4  Receivership Assets contrary to the Receiver's mandate; (e) preserve the books, records,
5  and documents of the Receivership Entities and Receivership Assets; (f) manage
6  litigation by and against the Receivership, the Receivership Entities and the Receivership
7  Assets; (g) propose for Court approval a fair and equitable distribution of the remaining
8  Receivership Assets; and (h) be available to respond to investor inquiries, all as further
9  set forth in this Order.

10  III. Asset Freeze

11  3. Except as otherwise specified herein or in other orders of this Court, all
12  assets of Larmore, all Receivership Assets, and all Recoverable Assets held by the Entity
13  Relief Defendants are frozen, except for assets in the Receiver's control or which come
14  under the Receiver's control, whose disposition is governed by other provisions of this
15  Order including but not limited to the use of such assets needed to continue the ordinary
16  course operations of the Receivership Entities for the benefit of investors as determined
17  by the Receiver as set forth in Paragraph 6.G of this Order. Defendants, Entity Relief
18  Defendants, and Defendants' and Entity Relief Defendants' officers, agents, servants,
19  employees, attorneys, subsidiaries and affiliates, and those persons in active concert or
20  participation with any of them, who receive actual notice of this Order, by personal
21  service or otherwise, and each of them, be and hereby are restrained and enjoined from,
22  directly or indirectly, transferring, assigning, selling, hypothecating, changing, wasting,
23  dissipating, converting, concealing, encumbering, or otherwise disposing of, in any
24  manner, any funds, assets, securities, claims or other real or personal property, including
25  any notes or deeds of trust or other interest in real property, wherever located, of any one
26  of the Defendants or Entity Relief Defendants (up to the amount of Recoverable Assets
27  held by the Entity Relief Defendants), or their subsidiaries or affiliates, owned by,
28  controlled by, managed by or in the possession or custody of any of them and from

- 3 -

1  transferring, encumbering, dissipating, incurring charges or cash advances on any debit or
2  credit card or credit arrangement of any one of Defendants and Entity Relief Defendants
3  (up to the amount of Recoverable Assets held by the Entity Relief Defendants). A non-
4  exhaustive list of known bank accounts with appropriate redactions for personally
5  identifiable information and entities subject to the asset freeze is attached hereto as
6  Exhibit B.[2]

7      IV.  General Powers and Duties of Receiver

8          4.  The Receiver shall have all powers, authorities, rights, and privileges
9  heretofore possessed by the Receivership Entities, and any officers, directors, managers,
10 managing members, and general and limited partners of the Receivership Entities, under
11 applicable state and federal law, by the governing charters, by-laws, articles, and/or
12 agreements in addition to all powers and authority of a receiver at equity, and all powers
13 conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692, and Fed.
14 R. Civ. Proc. 66, except that the Receiver shall conduct a cost/benefit analysis and
15 consult with the SEC staff prior to commencing any affirmative litigation.

16         5.  All of the powers derived from any source of any and all officers, directors,
17 managers, managing members, general and limited partners, employees, investment
18 advisers, accountants, attorneys, and other agents and advisers of the Receivership
19 Entities are hereby suspended, except to the extent as may be hereafter be expressly granted
20 by the Receiver in the Receiver's sole discretion and, to the extent necessary (in the sole
21 determination of the Receiver), approved by the Court.  The Receiver shall assume and
22 control the operation of the Receivership Entities and shall preserve all of their assets and
23 claims for the benefit of the Receivership Estate.  No person holding or claiming any
24 position of any type with any of the Receivership Entities shall have any authority to act
25 by or on behalf of any of the Receivership Entities, except as may be expressly
26 authorized or delegated by the Receiver in writing.

27

28     [2] The SEC and counsel for the Defendants are authorized to transmit a version of
Exhibit B that contains the full bank account numbers subject to this Order to the relevant
financial institutions listed on Exhibit B.

- 4 -

6. Without limiting the other provisions in this Order, the Receiver shall have the following general powers and duties:

A. Take and retain immediate possession and control of all Receivership Assets and all books, records and documents of the Receivership Entities, wherever located, related to the Receivership Assets, and to sue for and collect, recover, receive and take into possession from third parties, all Receivership Assets and records relevant thereto;

B. Manage, control, operate and maintain the Receivership Entities and hold in the Receiver's possession by and through the Receivership Estate, custody and control of all Receivership Assets, subject to the other provisions of this Order;

C. Take any action which, prior to the entry of this Order, could have been taken by the officers, directors, managers, managing members, and general and limited partners, and agents of the Receivership Entities, acting in their respective capacities;

D. Take such action as necessary and appropriate for the preservation of the Receivership Estate and Receivership Assets and to prevent the dissipation or concealment of the Receivership Assets;

E. Conduct an orderly liquidation or disposition of the Receivership Entities and the Receivership Assets in a manner and over a period of time calculated to maximize their value for investors and the Receivership Estate;

F. Have exclusive control of, and be made the sole authorized signatory for, all accounts at any bank, brokerage firm or financial institution that has possession or control of any Receivership Assets; *provided, however,* that the Receiver may from time to time designate additional signatories as determined in the Receiver's sole discretion;

G. Pay from the Receivership Assets necessary expenses required to preserve and administer the Receivership Assets and Receivership Estate, but in no event shall the Receiver, without prior order of the Court, make any payments or

transfers of property of a value in excess of $10,000 (ten-thousand dollars), except that the Receiver may pay the following fees, costs, expenses and other charges in the ordinary course without regard to (i) the foregoing cap and (ii) the asset freeze in Paragraph 3 of this Order, and without prior order of the Court: (i) compensation and benefits to employees, including temporary non-payroll staff, (ii) insurance premiums and related costs, (iii) other routine operating costs and expenses of the Receivership Estate, including, without limitation, taxes, rent, information technology (including maintenance of hardware and software), water, electric, telephone, sewage, garbage, trash removal, and other utilities and services, and (iv) all other costs and expenses authorized by this Court pursuant to this Order or any other order of this Court;

H.      Locate and bring into the Receivership Estate by all reasonable means Receivership Assets and Recoverable Assets that may have been conveyed to, or are under the possession and control of, third parties or otherwise concealed;

I.      Engage and employ agents, claim and noticing agents, persons, firms and other persons and entities, including accountants, attorneys, experts, liquidators, brokers, traders, or auctioneers (collectively, "Retained Personnel"), to assist in the carrying out of the Receiver's duties and responsibilities hereunder, subject to prior order of the Court, and pay Retained Personnel in accordance with the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions"), as modified by this Order;

J.      Manage any litigation and claims against the Receivership Entities and/or the Receivership Assets;

K.      Recommend to the SEC staff and counsel for the Defendants whether litigation against third parties should be commenced to recover assets for the benefit of the Receivership Estate and how the litigation fees and costs should be paid, including on a contingent fee basis;

- 6 -

L.     Commence, maintain, pursue, resist and defend all suits, actions, claims, and demands which may now be pending or which may be brought by or asserted against the Receivership Entities (in the name of the Receivership Entities and/or the Receiver), the Receivership Assets, the Receiver, or the Receivership Estate;

M.     Bring all other legal actions based on law or equity in any state, federal, or foreign court (including in the name of the Receivership Entities), as the Receiver deems necessary or appropriate in discharging the Receiver's duties as Receiver and maximizing recoveries for investors and creditors of the Receivership Entities;

N.     Sell, assign, transfer or otherwise dispose of any assets of the Receivership Entities either directly or through one or more Retained Personnel, subject to approval by this Court with respect to any material assets;

O.     At the appropriate time, propose to the Court a plan to distribute available Receivership Assets to investors and creditors of the Receivership Entities that may include provisions for (i) an initial distribution to be made by the Receiver, (ii) interim distributions to be made by the Receiver from time to time, (iii) a final distribution to be made by the Receiver, (iv) a bar date for the filing of claims in the Receivership Estate against the Receivership Entities and the Receivership Assets and/or for the filing of objections to a schedule of claims prepared by the Receiver for the purpose of making distributions, (v) a claim review and reconciliation process, (vi) a dispute resolution process for resolving any disputes concerning claims or proposed distributions, and (vii) such other matters as are determined by the Receiver to be reasonably necessary to facilitate or implement the claim and distribution processes, which plan shall be subject to Court approval;

P.     Cause the Receiver and its agents to be named as an additional insured on any insurance policies covering the Receivership Estate or Receivership Assets;

Q.     In the Receiver's sole discretion or as necessary to maintain lending relationships, obtain and/or maintain insurance covering the Receivership Estate,

- 7 -

the Receivership Entities and/or the Receivership Assets, and such insurance expense shall be deemed a normal, ordinary, and necessary operating expense of the Receivership Estate;

R.    Consult with the SEC staff, counsel for the Defendants, creditors and investors regarding any Receivership Estate matter; and

S.    Take such other action as may be approved by the Court.

V. Access to Information, Books, Records, and Accounts

7. The Receivership Entities and each of their (including former) officers, directors, managers, managing members, general and limited partners, agents, attorneys, accountants, and employees, as well as those acting in their place, are hereby ordered and directed to preserve and turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, the Receivership Entities and/or Receivership Assets; such information shall include but not be limited to books, records, documents, accounts and all other instruments and papers.

8. The Receivership Entities and each of their (including former) officers, directors, managers, managing members, general and limited partners, agents, attorneys, accountants, and employees, as well as those acting in their place, shall cooperate fully with the Receiver in his or her efforts to carry out the obligations, duties and purposes set out in this Order, subject to and limited by their Fifth Amendment rights.

9. The Receiver is authorized to open all electronic mail generated by, directed to, or received by the Receivership Entities and all mail directed to or received by or at the offices or post office boxes of the Receivership Entities, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

10. All banks, brokerage firms, financial institutions, and other persons or entities which have possession, custody, or control of any assets or funds held by, in the name of, or for the benefit, directly or indirectly, of the Receivership Entities that receive actual notice of this Order shall (i) not liquidate, transfer, sell, convey or otherwise

1    transfer any assets, securities, funds, or accounts in the name of or for the benefit of the
2    Receivership Entities except upon written instructions from the Receiver; (ii) not exercise
3    any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to
4    transfer any funds or assets to the Receiver's control without the permission of this Court;
5    and (iii) cooperate expeditiously in providing information and transferring funds, assets,
6    and accounts to the Receiver or at the direction of the Receiver.

7        VI. Notice to Third Parties

8        11. The Receiver shall promptly give notice of the Receiver's appointment to
9    all known past and present officers, directors, managers, managing members, general and
10   limited partners, agents, attorneys, accountants, and employees of the Receivership
11   Entities, as the Receiver deems necessary or advisable to effectuate the operation of the
12   receivership.

13       12. All persons and entities owing any obligation or debt to any Receivership
14   Entity shall, until further ordered by this Court, perform and/or pay all such obligations in
15   accordance with the terms thereof to the Receiver and its receipt for such payments shall
16   have the same force and effect as if the applicable Receivership Entity had received such
17   performance or payment.

18       13. The Receiver is authorized to communicate with, and/or serve this Order
19   upon, any person, entity, or government office that he deems appropriate to inform them
20   of the status of this matter and/or the financial condition of the Receivership Estate. All
21   government offices which maintain public files of security interests in real and personal
22   property shall, consistent with such office's applicable procedures, record this Order
23   upon the request of the Receiver or the SEC.

24       14. The Receiver is authorized to instruct the United States Postmaster to hold
25   and/or reroute mail which is related, directly or indirectly, to the business, operations or
26   activities of any of the Receivership Entities (the "Receiver's Mail"), including all mail
27   addressed to, or for the benefit of, the Receivership Entities. The United States
28   Postmaster shall not comply with, and shall immediately report to the Receiver, any

change of address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail. The Receivership Entities shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver. All personal mail of any individuals, and/or any mail appearing to contain privileged information, and/or any mail not falling within the mandate of the Receiver, shall be released to the named addressee by the Receiver. The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mailbox, depository, business or service, or mail courier or delivery service, hired, rented or used by the Receivership Estate. The Receivership Entities shall not open a new mailbox, or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository or courier service.

15. Subject to payment for services provided, any entity furnishing space, water, electric, telephone, sewage, garbage, trash removal, or any other services to the Receivership Entities shall maintain such service and related account in the name of the Receivership Entity for the benefit of the Receiver and Receivership Estate, or transfer such account to the Receiver, unless instructed to the contrary by the Receiver.

VII. Injunction Against Interference with Receiver

16. The Receivership Entities, and all persons and entities receiving notice of this Order by personal service, mail, electronic mail, facsimile, regular mail, through electronic case filing notices, overnight courier, or in any other manner consistent with due process, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, that would:

A.  Interfere with the Receiver's efforts to take control, possession, or management of the Receivership Entities or any Receivership Assets; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose

of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Assets;

B.  Hinder, obstruct or otherwise interfere with the Receiver in the performance of the Receiver's duties; such prohibited actions include but are not limited to, concealing, destroying or altering records or information or interfering with any claim, distribution, and/or wind-down plans or processes established by the Receiver;

C.  Dissipate or otherwise diminish the value of any Receivership Assets; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any Receivership Assets, enforcing judgments, assessments, or claims against the Receivership Entities or any Receivership Assets, attempting to modify, cancel, terminate, call, extinguish, revoke, or accelerate (the due date of) any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by the Receivership Estate or which otherwise affects any Receivership Assets; or,

D.  Interfere with or harass the Receiver, any Retained Personnel or any Ordinary Course Professional, or interfere in any manner with the exclusive jurisdiction of this Court over the Receiver, the Receivership Estate, the Receivership Entities, or the Receivership Assets.

17. The Receiver shall promptly notify the Court, the SEC staff, and counsel for the Defendants of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

VIII. Stay of Litigation

18. As set forth in detail below, the following proceedings, *excluding* (i) the instant proceeding, (ii) all police or regulatory actions and actions of the SEC related to the above-captioned enforcement action, (iii) all actions pending or to be brought by the United States of America or any of its agencies, (iv) all actions pending or to be brought

1   by any state or commonwealth within the United States of America pursuant to such
2   state's or commonwealth's police and regulatory power, and (v) all actions subject to the
3   stipulation attached hereto as Exhibit C are stayed and/or enjoined until further Order of
4   this Court:

5        All existing or future civil legal proceedings of any nature, including, but not
6        limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions,
7        default proceedings, or other actions of any nature involving: (a) the Receiver, in
8        the Receiver's capacity as Receiver; (b) the Retained Personnel, in their respective
9        capacities as such; (c) the Receivership Estate; and (d) the Receivership Entities or
10       any Receivership Assets, wherever located. Any person or entity that seeks to put
11       one or more of the Receivership Entities into voluntary or involuntary bankruptcy
12       proceedings must seek leave of Court on motion upon no less than 14 (fourteen)
13       days' notice to the Receiver and to the SEC staff. Any such motion must show
14       good cause for the filing of voluntary or involuntary bankruptcy proceedings for
15       such Receivership Entities. Any person or entity may seek leave of this Court to
16       proceed against the Receiver, in such capacity; the Retained Personnel, in such
17       capacity; the Receivership Estate; the Receivership Entities; and the Receivership
18       Assets. A non-exclusive list of litigations involving the Receivership Entities and
19       Receivership Assets that are not otherwise excluded from the stay is set forth on
20       Exhibit D hereto.

21       19. The foregoing stay and injunction shall not prohibit the Receiver from
22   commencing or continuing any litigation in its own name or in the name of any
23   Receivership Entity.  For any cause of action accrued or accruing in favor of the
24   Receivership Estate against a third person or party, any applicable statute of limitation is
25   tolled during the period in which this stay of existing legal proceedings and injunction
26   against commencement of new or expanded legal proceedings is in effect as to that cause
27   of action. The Receiver shall provide notice of this stay of litigation order to the parties
28   in all known pending cases against the Defendants and entities that they own or control.

- 12 -

IX. Managing Assets

20. The Receiver shall at all times administer the Receivership Assets with the care and diligence that an ordinary prudent individual would use in handling such person's own estate.

21. Subject to the restrictions in paragraph 6(G), the Receiver may, without further Order of this Court pay expenses that arise in the ordinary course of the Receivership Entities' orderly wind down, on terms and in the manner the Receiver deems most beneficial to the Receivership.

22. The Receiver is authorized, without leave of Court, to take all actions to manage, maintain, and/or wind-down business operations of the Receivership Entities, including making legally required payments to creditors, employees, and agents of the Receivership Entities and Receivership Estate, communicating with vendors, landlords, investors, governmental and regulatory authorities, and others, and preparing and filing all necessary tax returns, as appropriate and necessary for the orderly wind down or disposition of the Receivership Entities consistent with 28 U.S.C. § 959(b).

23. In the exercise of the Receiver's business judgment, the Receiver may take all necessary steps to enable the Receivership Estate to obtain and maintain the status of a taxable "Settlement Fund," within the meaning of Section 468B of the Internal Revenue Code and of the regulations.

X. Investigate and Prosecute Claims

24. The Receiver is authorized, empowered, and directed to, in its own name or in the name of the Receivership Entities, investigate, prosecute, commence, maintain, defend, intervene in or otherwise participate in, compromise, settle, and/or adjust actions in any state, federal or foreign court or proceeding of any kind as may, in the Receiver's sole discretion, be advisable or proper to recover and/or conserve Receivership Assets.

25. The Receiver is authorized, empowered, and directed to investigate the manner in which the financial and business affairs of the Receivership Entities were conducted and (after consultation with SEC staff) to institute such actions and legal

- 13 -

1  proceedings, for the benefit and on behalf of the Receivership Estate, as the Receiver
2  deems necessary and appropriate. Prior to investigating any Defendants or Relief
3  Defendants, the Receiver shall coordinate with the SEC staff to minimize expense and
4  duplication.

5      26. In furtherance of the Receiver's power to manage litigation and to conduct
6  an investigation, the Receiver is authorized to issue subpoenas for documents and
7  testimony consistent with the Federal Rules of Civil Procedure and Court orders without
8  further leave of Court.

9      27. Any and all attorney-client privilege, work product protection, common
10 interest or joint defense privilege, or other privilege or immunity (collectively, the
11 "Privileges") of the Receivership Entities (but excluding any of the Relief Defendants),
12 and/or attaching to or arising in or in connection with any of their documents, data or
13 communications (whether written or oral), are hereby transferred and belong exclusively
14 to the Receiver for the benefit of the Receivership Estate. The Receiver therefore has
15 sole authority, and is hereby empowered, to enforce, waive, assign, or release any or all
16 Privileges in the exercise of its duties as Receiver.

17     XI. Bankruptcy Filing

18     28. The Receiver may seek authorization of this Court to file a voluntary
19 petition for relief under Title 11 of the United States Code (the "Bankruptcy Code") for
20 any or all of the Receivership Entities upon 5 business days' notice. If any Receivership
21 Entity or any Receivership Asset is placed into a bankruptcy proceeding, the Receiver
22 may become, and may be empowered to operate the entity or asset, as a debtor in
23 possession. In such a situation, the Receiver shall have all of the powers and duties as
24 provided a debtor in possession under the Bankruptcy Code to the exclusion of any other
25 person or entity.   The Receiver is vested with management authority for the
26 Receivership Entities and the Receivership Assets and may therefore file such Chapter
27 11 petitions and have all of the powers and duties as provided a debtor in possession
28 under the Bankruptcy Code. *See In re Bayou Group, LLC,* 564 F.3d 541, 548-49 (2d

1    Cir. 2009).

2         29. The provisions of Article VIII above bar any person or entity, other than the
3    Receiver, from placing any Receivership Entity or any Receivership Asset into
4    bankruptcy without prior leave of Court on motion providing no less than 14 (fourteen)
5    days' notice to the Receiver, the SEC, and to counsel for the Defendants.

6         XII. Conflicts; Liability of the Receiver

7         30. The Receiver has a continuing duty to ensure that there are no conflicts of
8    interest between the Receiver, on the one hand, and the Receivership Estate and
9    Receivership Assets, on the other hand.

10        31. Until further Order of this Court, the Receiver shall not be required to post
11   bond or give an undertaking of any type in connection with the Receiver's fiduciary
12   obligations in this matter, and, if so ordered, all costs and expenses of procuring any such
13   bond or undertaking shall be deemed expenses reimbursable to the Receiver from the
14   Receivership Estate.

15        32. The Receiver and Retained Personnel are entitled to rely on all outstanding
16   rules of law and Orders of this Court and shall not be liable to any person or entity for
17   their own good faith compliance with any order, rule, law, judgment, or decree. In no
18   event shall the Receiver or Retained Personnel be liable to anyone for their good faith
19   compliance with their respective duties and responsibilities.

20        33. The Receiver and Retained Personnel shall be indemnified by each of the
21   Receivership Entities except for gross negligence, willful misconduct, fraud, or breach of
22   fiduciary duty determined by a final order no longer subject to appeal, for all judgments,
23   costs, and reasonable expenses including legal fees (which shall be paid under the
24   indemnity after court approval as they arise) arising from or related to any and all claims
25   of whatsoever type brought against any of them in their capacities as Receiver and
26   Retained Personnel; provided, however, that nothing herein shall limit the immunity of
27   the Receiver and the Receiver's advisers and agents allowed by law or deprive the
28   Receiver or the Receiver's advisers and agents of indemnity for any act or omission for

1   which they have immunity.

2       34. This Court shall retain exclusive jurisdiction over any action filed against
3   the Receiver or Retained Personnel based upon acts or omissions committed in their
4   representative capacities or in connection with any action filed by any of them asserting
5   an indemnity claim.

6       35. In the event the Receiver decides to resign, the Receiver shall first give
7   written notice to counsel for the Defendants, the SEC's counsel of record, and the Court
8   of its intention, and the resignation shall not be effective until the earlier of the date on
9   which the Court appoints a successor and thirty (30) days from the date the Receiver shall
10  have given such notice. The Receiver shall then follow such instructions as the Court
11  may provide.

12      36. Prior to taking any action against the Receiver regarding the Receiver's
13  conduct in his capacity as the Receiver, a person must seek and receive leave of this
14  Court. This Court shall retain exclusive jurisdiction over any action or controversy
15  regarding any matters relating to or arising from the Receiver's role and conduct in such
16  role.

17      37. This Article XII shall survive the resignation or removal of the Receiver
18  and any Retained Personnel and the termination of the receivership.

19      XIII. Recommendations and Reports

20      38. No later than ninety (90) days after the entry of this Order, the Receiver
21  shall file and serve a full report and accounting of Receivership Assets (the "First Status
22  Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by
23  the report) the existence, value, and location of all Receivership Assets, and of the extent
24  of liabilities, both those claimed to exist by others and those the Receiver believes to be
25  legal obligations of the Receivership.

26      39. The First Status Report shall contain the following:

27      A.    A summary of the operations of the Receiver;

28      B.    The amount of cash on hand, the amount and nature of accrued

- 16 -

administrative expenses, and the amount of unencumbered funds in the estate;

C.  A schedule of all the Receiver's receipts and disbursements, with one column for the quarterly period covered and a second column for the entire duration of the receivership;

D.  A description of all known Receivership Assets;

E.  A description of liquidated and unliquidated claims held by the Receivership Estate and approximate valuations of claims;

F.  The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations;

G.  A recommendation whether to modify the list of Receivership Entities attached hereto as Exhibit A based on the Receiver's investigation; and

H.  Any other information that the Receiver reasonably deems appropriate to include in the First Status Report.

40. For good cause shown, the Receiver may seek leave of Court to extend the time set for the filing of the First Status Report and any Quarterly Status Report. In addition, if requested by the SEC or counsel for the Defendants, the Receiver is hereby authorized to share with the SEC and counsel for the Defendants a list of all known investors and creditors and the amount of their investments and claims, as applicable, redacted to exclude personally identifiable information.

41. Subsequent to the filing of the First Status Report, the Receiver shall file a quarterly status report (the "Quarterly Status Report") containing substantially the same type of information required to be set forth in the First Status Report. The Quarterly Status Report shall be filed within twenty (20) days of the end of each quarter, except that, the first Quarterly Status Report shall be filed upon the passing of the first full quarter after the First Status Report is filed.

42. On the request of the SEC, the Receiver shall provide any documentation that the SEC deems necessary to meet its reporting requirements, that is mandated by

1   statute or Congress, or that is otherwise necessary to further the SEC's or State Securities
2   Regulator's mission.

3       XIV. Fees, Expenses, and Accountings

4       43. Subject to the specific provisions of this Order, the Receiver need not
5   obtain Court approval prior to the disbursement of Receivership Assets for expenses in
6   the ordinary course of the wind down of the Receivership Estate.

7       44. Subject to the specific provisions of this Order, the Receiver is authorized
8   to solicit Retained Personnel to assist the Receiver in carrying out the duties and
9   responsibilities described in this Order. The Retained Personnel may include, without
10  limitation, Stoneturn Group, LLP, its professionals, paraprofessionals, and administrative
11  staff (together, "Stoneturn"). The Receiver is hereby expressly authorized to utilize the
12  services of Stoneturn as Retained Personnel (rather than utilizing other similarly situated
13  or available personnel or professional services firms).

14      45. With the exception of Stoneturn and Archer & Greiner, P.C. ("Archer &
15  Greiner"), whom the Court hereby approves as Retained Personnel under this Order, the
16  Receiver shall not engage any Retained Personnel without first obtaining an Order of the
17  Court authorizing such engagement. For the avoidance of doubt, the term "Retained
18  Personnel" shall include any professionals retained to provide services to or for any
19  Receivership Entity, any Receivership Asset, the Receiver, or the Receivership Estate,
20  and any counsel retained for any purpose.

21      46. Within thirty (30) days of entry of this Order, each of Stoneturn and Archer
22  & Greiner shall file with the Court sworn declarations disclosing any and all material
23  connections that they may have to this case. Each of Stoneturn and Archer & Greiner
24  shall have a continuing obligation to disclose any potential conflicts that may arise during
25  the course of this Receivership.

26      47. The Receiver and Retained Personnel are entitled to reasonable
27  compensation and expense reimbursement from the Receivership Assets as described in
28  the Billing Instructions agreed to by the Receiver, as modified by this Order, a copy of

1   which is available at https://www.sec.gov/oiea/Article/billinginstructions.pdf.   Such
2   compensation shall require the prior approval of the Court.

3        48. Within forty-five (45) days after the end of each calendar quarter, the
4   Receiver and Retained Personnel shall apply to the Court for compensation and expense
5   reimbursement from the Receivership Assets (the "Quarterly Fee Applications"). At least
6   thirty (30) days prior to filing each Quarterly Fee Application with the Court, the Receiver and
7   Retained Personnel will serve upon counsel for the Defendants and counsel for the SEC a
8   complete copy of its proposed Quarterly Fee Application, together with all exhibits and
9   relevant billing information in a format to be provided by SEC staff.

10        49. All Quarterly Fee Applications will be interim and will be subject to cost
11   benefit and final reviews at the close of the Receivership Estate. Such cost benefit review
12   may include an evaluation of the results achieved in relation to the costs associated with
13   any particular Receivership Asset. At the close of the Receivership Estate, the Receiver
14   and Retained Personnel will each file a final fee application, describing in detail the costs
15   and benefits associated with all litigation and other actions pursued by the Receiver or
16   Retained Personnel, as applicable, during the course of the Receivership Estate.

17        50. Quarterly Fee Applications will be subject to a holdback in the amount of
18   10% of the amount of fees and expenses for each application filed with the Court or such
19   other percentage holdback as the Court may order on its own motion or on the request of
20   the SEC or counsel for the Defendants. To the extent any fees or expenses are not
21   approved by the Court, they must be offset against the 10% holdback (or such other
22   holdback ordered by the Court) or be disgorged from the professional as appropriate.

23        51. Each Quarterly Fee Application shall:

24        A.   Comply with the terms of the Billing Instructions agreed to by the
25             Receiver, as modified by this Order; and

26        B.   Contain representations (in addition to the Certification required by the
27             Billing Instructions) that: (i) the fees and expenses included therein were
28             incurred in the best interests of the Receivership Estate; and, (ii) with the

- 19 -

exception of the Billing Instructions, as modified by his Order (and the fact that the Receiver may benefit (directly or indirectly) from the compensation paid to StoneTurn), the Receiver or Retained Personnel, as applicable, has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Assets, or any sharing thereof.

52. At the close of the Receivership, the Receiver shall submit a Final Accounting, in a format to be provided by SEC staff, and the Receiver and each Retained Personnel shall submit a final application for compensation and expense reimbursement.

53. With respect to any motion or application filed in this case by the Receiver, if no party in interest objects prior to the objection deadline applicable thereto, the Receiver may file a notice of no objection with this Court and request that the Court enter the corresponding order without the need for a hearing.

54. This Order shall remain in full force and effect pending further order of the Court.

**SO ORDERED.**

Dated this 21st day of December, 2023.



Douglas L. Rayes
United States District Judge

- 20 -

# EXHIBIT A

## EXHIBIT A

### RECEIVERSHIP ENTITIES

1000 WEST MARION PG FL, LLC
1921 GALLATIN PIKE NASHVILLE TN, LLC
2006 OPERATING PARTNERSHIP, L.P.
2513 E NORTH STREET KENDALLVILLE IN, LLC
412 CROSS OAKS MALL PLAINWELL ML, LLC
5339 ELVIS PRESLEY BLVD. MEMPHIS TN, LLC
5450 US HIGHWAY 80 EAST PEARL MS, LLC
60 COLONIAL PROMENADE PARKWAY ALABASTER AL, LLC
601 RETTA FL, LLC
601 TRENTON ROAD MCALLEN TX, LLC
613 RETTA FL, LLC
700 NORTH GRAND AVENUE MT. PLEASANT, 1A, LLC
751W RETTA ESPLANDE FL, LLC
752 SOUTH ANDY GRIFFITH PARKWAY MT AIRY NC, LLC
7525 PINE VALLEY LANE OWNER, LLC
8001 VAUGHN ROAD MONTGOMERY AL, LLC
81 JAMESON LANE GREENVILLE AL, LLC
880 W MARION AVE FL, LLC
900 WEST MARION AVENUE FL, LLC
ALOHA POP UP PRODUCTIONS, LLC
ARCITERRA AA BARBOURVILLE KY, LLC
ARCITERRA AA LINCOLN NE, LLC
ARCITERRA AA MANISTEE ML, LLC
ARCITERRA AA PAPILLION NE, LLC
ARCITERRA AA PEARL MS, LLC
ARCITERRA AA THEODORE AL, LLC
ARCITERRA AA WEST LIBERTY KY, LLC
ARCITERRA AZ SLIDELL LA, LLC
ARCITERRA AZ TEMPLE GA, LLC
ARCITERRA AZ WILLIS TX, LLC
ARCITERRA BELL YORK SC, LLC
ARCITERRA BP OLATHE KS, LLC
ARCITERRA CH NEW ORLEANS LA, LLC

ARCITERRA COMMERCIAL PROPERTY REIT, LP
ARCITERRA COMMERICAL PROPERTY REIT, INC.
ARCITERRA COMPANIES, LLC
ARCITERRA CV LAFAYETTE LA, LLC
ARCITERRA CV TARPON SPRINGS FL, LLC
ARCITERRA DESIGN, LLC
ARCITERRA DG CAMPBELLSVILLE KY, LLC
ARCITERRA DG GREENVILLE KY, LLC
ARCITERRA DG JUNCTION CITY KY, LLC
ARCITERRA DG MEMPHIS TN, LLC
ARCITERRA DG NORTH BEND OH, LLC
ARCITERRA DG RAVENNA KY, LLC
ARCITERRA DG SHEPHERDSVILLE KY, LLC
ARCITERRA DG SOUTH CHARLESTON OH, LLC
ARCITERRA DG WISTER OK, LLC
ARCITERRA DKS GRAND CHUTE WL, LLC
ARCITERRA FD BOWMAN SC, LLC
ARCITERRA FD EHRHARDT SC, LLC
ARCITERRA FD GREELEYVILLE SC, LLC
ARCITERRA FD PAXVILLE SC, LLC
ARCITERRA FD TUBERVILLE SC, LLC
ARCITERRA FESTIVAL MONTGOMERY AL, LLC
ARCITERRA GC JOHNSON CITY NY, LLC
ARCITERRA GREYSTONE HOOVER AL, LLC
ARCITERRA GROUP, LLC
ARCITERRA HD HENDERSONVILLE TN, LLC
ARCITERRA HD MCALLEN TX, LLC
ARCITERRA KLS JENSEN BEACH FL, LLC
ARCITERRA KLS WARSAW IN, LLC
ARCITERRA KLS WAUSAU WL, LLC
ARCITERRA MICHIGAN ROAD INDIANAPOLIS IN, LLC
ARCITERRA MOV GAL GODDARD KS, LLC
ARCITERRA MOV GAL PARK CITY KS, LLC
ARCITERRA MW NASHVILLE TN, LLC
ARCITERRA NATIONAL REIT, INC.
ARCITERRA NATIONAL REIT, LP
ARCITERRA NOBLE WEST NOBLESVILLE 1N, LLC

ARCITERRA NOTE ADVISORS II, LLC
ARCITERRA NOTE ADVISORS III, LLC
ARCITERRA NOTE FUND II LLC
ARCITERRA NOTE FUND III LLC
ARCITERRA NS INVESTMENT CO.
ARCITERRA OFF PEP PEARL MS, LLC
ARCITERRA OLATHE POINTE OLATHE KS LLC
ARCITERRA OPPORTUNITY FUND I, LLC
ARCITERRA OR BATTLE CREEK ML, LLC
ARCITERRA OS MT. PLEASANT IA, LLC
ARCITERRA REAL ESTATE INVESTMENT TRUST, INC.
ARCITERRA REGIONS LAMARQUE TX, LLC
ARCITERRA REIT I MEMBER, LLC
ARCITERRA REIT I MEMBER, LLC
ARCITERRA REIT I MEMBER, LLC
ARCITERRA REIT RSC, LP
ARCITERRA REIT, LP
ARCITERRA SHOPPES AT ALABASTER AL, LLC
ARCITERRA STAR LANCASTER OH, LLC
ARCITERRA STRATEGIC INCOME CORPORATION-BELLEVILLE CROSSING IL
ARCITERRA STRATEGIC RETAIL - SUFFOLK VA, LLC
ARCITERRA STRATEGIC RETAIL ADVISOR, LLC
ARCITERRA STRATEGIC RETAIL ADVISOR, LLC
ARCITERRA STRATEGIC RETAIL REIT, INC.
ARCITERRA STRATEGIC RETAIL-ELYRIA OH, LLC
ARCITERRASTRATEGIC RETAIL-PLAINFIELD VILLAGEUM, LLC
ARCITERRA STRATEGIC RETAIL-PLAINFILED VILLAGE IN, LLC
ARCITERRA STRATEGIC RETAIL-WHEATLAND IL, LLC
ARCITERRA S-W BURTON ML, LLC
ARCITERRA S-W KALAMAZOO ML, LLC
ARCITERRA S-W LORAIN OH, LLC
ARCITERRA USB BISMARK ND, LLC
ARCITERRA USB NEW ALBANY OH, LLC
ARCITERRA USB ROCHESTER MN, LLC
ARCITERRA VERMONT INDIANAPOLIS IN, LLC
ARCITERRA VN CLARKSVILLE TN, LLC ~
ARCITERRA VN COLUMBIA TN LLC

ARCITERRA VN DICKSON TN, LLC
ARCITERRA VZ HOME GA, LLC
ARCITERRA VZ ROME GA, LLC
ARCITERRA WALCENT GREENVILLE AL, LLC
ARCITERRA WALCENT KENDALLVILLE IN, LLC
ARCITERRA WALCENT PLAINWELL ML, LLC
ARCITERRA WESTGAGE INDIANAPOLIS MEMBER, LLC
ARCITERRA WESTGATE INDIANAPOLIS IN II, LLC
ARCITERRA WESTGATE INDIANAPOLIS IN, LLC
ARCITERRA WG HOMETOWN IL, LLC
ARCITERRA WG KILMARNOCK VA, LLC
ARCITERRA WG MILWAUKEE WL, LLC
ARCITERRA WHITEFISH ADVISORS, LLC
ARCITERRA WHITEFISH OPPORTUNITY FUND, LLC
ARCITERRA WM DOUGLASVILLE GA, LLC
ASR REITLP
AT 18 MILE CENTRAL SC, LLC
AT ALTUS CUMBERLAND GA II, LLC
AT ALTUS CUMBERLAND GA, LLC
AT ALTUS CUMBERLAND MEMBER, LLC
AT ALTUS ECHELON IN, LLC
AT ALTUS ROSWELL GA, LLC
AT AUBURN PLAZA IN II, LLC
AT AUBURN PLAZA IN, LLC
AT AUBURN PLAZA MEMBER, LLC
AT BELLEVILLE CROSSING IL-INLINE, LLC
AT BELLEVILLE CROSSING IL-OUTLOTS LLC
AT BLOOMINGTON IL, LLC
AT BOUTTE LA, LLC
AT BRIARGATE IL, LLC
AT BUENA VISTA GA, LLC
AT CANAL WINCHESTER OH, LLC
AT CASTLETON IN ASSOCIATION MANAGER, LLC
AT CASTLETON IN MEMBER II, LLC
AT CASTLETON IN MEMBER, LLC
AT CASTLETON IN MEMBER, LLC
AT CASTLETON IN OWNER II, LLC

AT CASTLETON IN OWNER, LLC
AT CASTLETON IN OWNER, LLC
AT CASTLETON IN OWNER, LLC
AT CEDARTOWN GA OUTLOT, LLC
AT CEDARTOWN GA, LLC
AT CENTERVILLE GA, LLC
AT COLONY FITZGERALD GA LLC
AT CONCORD, LLC '
AT DILLON SC OUTLET, LLC
AT EASTMAN GA II, LLC
AT EASTMAN GA, LLC
AT EASTMAN GA, LLC
AT EASTMAN MEMBER, LLC
AT ELYRIA OH INLINE, LLC
AT ELYRIA OH OUTLOT, LLC
AT FL CONSTRUCTION, LLC
AT FORUM KY MEMBER II, LLC
AT FORUM KY MEMBER, LLC
AT FORUM KY MEMBER, LLC
AT FORUM LOUISVILLE KY II, LLC
AT HL BURLINGTON IAII, LLC
AT HL BURLINGTON IA, LLC
AT HL BURLINGTON MEMBER, LLC
AT JEFFERSON CENTER FW IN OWNER, LLC
AT JEFFERSON CENTER FW IN, LLC
ATJPM LINDENHURST IL, LLC
AT LIMA PLAZA FW IN OWNER, LLC
AT LIMA PLAZA FW IN, LLC
AT LINDENHURST IL, LLC
AT LONGVIEW MEMBER, LLC
AT LONGVIEW OUTLOT NORTHEAST, LLC
AT LONGVIEW OUTLOT WEST, LLC
AT LONGVIEW TXII, LLC
AT LONGVIEW TX, LLC
AT LUBBOCK TX, LLC
AT MAX FW IN OWNER, LLC '
AT MAX FW IN, LLC

AT MAYODAN MEMBER, LLC
AT MAYODAN NCII, LLC
AT MAYODAN NC, LLC
AT MF VEGAS, LLC
AT MIDWAY ELYRIA OH, LLC
AT ML LEASEHOLD HI, LLC
AT ML MANAGEMENT HI LLC
AT MMH HI LLC
AT MT. PLEASANT LOT 2, LLC
AT NEW LENOX IL-GL, LLC
AT NEW LENOX IL- INLINE, LLC
AT NEW LENOX IL-INLINE II, LLC
AT NEW LENOX IL-OUTLOTS, LLC
AT NEW LENOX-IL MEMBER, LLC
AT NEW WEST CLIFTON CO, LLC
AT OLATHE MANAGER, LLC
AT OLATHE MANAGER, LLC
AT PINE VALLEY FW IN OWNER, LLC
AT PINE VALLEY FW IN, LLC
AT PLAINFIELD VILLAGE IN II, LLC
AT PLAINFIELD VILLAGE IN, LLC
AT PLAINFIELD VILLAGE MEMBER, LLC
AT PORTLAND COMMONS IN OWNER, LLC
AT PORTLAND COMMONS IN, LLC
AT PT DANVILLE IL II, LLC
AT PT DANVILLE IL, LLC
AT PT DANVILLE MEMBER, LLC
AT SALEM IL OUTLOT, LLC
AT SALISBURY NC OUTLOT, LLC
AT SANDERSVILLE GA, LLC
AT SEVEN HILLS AURORA CO II, LLC
AT SEVEN HILLS AURORA CO, LLC
AT SEVEN HILLS AURORA CO, LLC
AT SEVEN HILLS AURORA MEMBER, LLC
AT STATESBORO SQUARE GA, LLC
AT SUFFOLK VA2B-2, LLC
AT SUFFOLK VA2B-3, LLC

AT SUFFOLK VA2B-5, LLC
AT SUFFOLK VA 2B-6, LLC
AT SUFFOLK VABWW, LLC
AT SUFFOLK VA SC, LLC
AT SUWANEE DEPOT GA, LLC
AT SWEDEN MEMBER, LLC
AT SWEDEN NY II, LLC
AT SWEDEN NY, LLC
AT SWEEDEN NY OUTLOT, LLC
AT TIFFANY SQUARE ROCKY MOUNT NC, LLC
AT TOWNE SQUARE ROME GA, LLC
ATVILLA PLATTE LA II, LLC
AT VILLA PLATTE MEMBER, LLC
AT VILLE PLATTE LA, LLC
AT WHEATLAND NAPERVILLE IL, LLC
AT WILDWOOD PLAZA MO, LLC
ATA CHERRY CREEK IL, LLC
ATA CYPRESS TOWN CENTER TX, LLC
ATA FISHVILLE FL, LLC
ATA FISHVILLE MANAGEMENT, LLC
ATA FORUM LOUISVILLE KY, LLC
ATA FORUM LOUISVILLE,LLC
ATA HIRAM SQUARE GA, LLC
ATA LANIER FAYETTEVILLE GA II, LLC
ATA LANIER FAYETTEVILLE GA, LLC
ATA LANIER FAYETTEVILLE MEMBER, LLC
ATA MERCADO ST. AUGUSTINE FL, LLC
ATA PALENCIA ST. AUGUSTINE FL, LLC
ATA PLAZA OK, LLC
ATA PRESTON PLAZA KY, LLC
ATA ROGERS BRIDGE GA, LLC
ATA STONE LITHONIA GA, LLC
ATA TRINITY PLACE TN, LLC
ATG REIT RSC, LP
ATR 32, LLC
BPS, L.L.C.
BPS, L.L.C. OF ALABAMA

BELLEVILLE IL OUTLOT 6, LLC
BLACK POINT RD, LLC
BREWHOUSE CENTER COURT, LLC
CASTLETON SHOPPING CENTER MK DISPOSITION, LLC
CASTLETON SHOPPING CENTER MK DISPOSITION, LLC
CHOVIA SHOPS MT AIRY NC, LLC
CSL INVESTMENTS, LLC
COLE CAPITAL FUNDS, LLC
DB COMMERCIAL MANAGEMENT, LLC
FISHVILLE KIOSK MEMBER, LLC
FK TELLURIDE, LLC
FUDGE IS US PG, LLC
FV BUILDING 13, LLC
FV BUILDING 15, LLC
GLENROSA 32, LLC
HARBOURVIEW MARKETPLACE, LLC
HARBOURVIEW STATION WEST, LLC
HELENA STAR MT, LLC
JB FISHVILLE HARBOR LAND LLC
JB FISHVILLE RETAIL LAND LLC
JB FORUM LAND, LLC
JB ML LAND HI, LLC ~
JB OLATHE OUTLOT 2, LLC
JB RE INVESTMENTS, LLC
JB SEVEN HILLS, LLC
JB SEVEN HILLS, LLC
JB TRANSPORTATION, LLC
JBM ACQUIST10NS LLC
JJ RESTAURANT HOLDINGS, LLC
JMLBC G4, LLC
JML MANAGER, LLC
JML TRUST MANAGER, LLC
LEGAL FLOAT LENDING, LLC
LOUISVILLE RESTAURANT PARTNERS, LLC
LOWER 5629 ROCKRIDGE ROAD, LLC
MML INVESTMENTS, LLC
JMMAL INVESTMENTS, LLC

MONTGOMERY MATTRESS, LLC
MONTGOMERY MATTRESS, LLC
PG HOSPITALITY, LLC
PG WATERFRONT HOSPITALITY, LLC
PT PLAZA, LLC
SAML BAR AND GRILL, LLC
SPIKE HOLDINGS AZ, LLC
STAR MT, LLC
STAR OH, LLC
THE EXCHANGE PLAINWELL ML, LLC
UPPER 5629 ROCKRIDGE ROAD, LLC
VBH PG, LLC
WALCENT ARKADELPHIA AK, LLC
WALCENT ELK/IN, LLC
WALCENT KENDALLVILLE IN, LLC
WALCENT LAWTON OK, LLC
WALCENT MORRILTON AK, LLC
WALCENT NEWC/IN, LLC
WALCENT PLAINWELL ML, LLC
WALCENT SHELBY ML, LLC
WALCENT SHOPS SUWANEE GA, LLC
WALCENT WAYNESBORO MS, LLC
WAWASEE WATERCRAFTS, LLC
WHEATLAND CROSSING OWNERS ASSOCIATION
WHEATLAND MARKETPLACE LOT 7 CONDOMINIUM ASSN.
WHITEFISH OPPORTUNITY FUND, LLC

# EXHIBIT B

**NON-EXHAUSTIVE LIST OF JONATHAN LARMORE'S ASSETS AND ENTITIES SUBJECT TO ASSET FREEZE ORDER**

**City National Bank** Legal Processing 555 S. Flower Street, 18th Floor Los Angeles, CA 90071
Email: Legal_Processing@cnb.com

| Account | Account Name |
|---------|--------------|
| XXXXXX6693 | Jonathan M Larmore; aka Sole and Separate |

**KS StateBank** 1010 Westloop Place, Manhattan, KS 66502, 785-587-4000

| Account | Account Name |
|---------|--------------|
| XXXXXX0406 | Jonathan M Larmore or Michelle A Larmore |
| XXXXXX0883 | Jon Larmore - Savings |
| XXXXXX6141 | Jonathan M Larmore |
| XXXXXX7488 | Jon Larmore - Sole & Sep |
| XXXXXX8836 | Wawasee Family Investments LP |

**Ridge Clearing & Outsourcing** 1981 Marcus Ave # 200, New Hyde Park, NY 11042
(516) 472-5400

| Account | Account Name |
|---------|--------------|
| XXXXXX7728 | Jonathan Larmore |

**Wells Fargo** Wells Fargo Bank, N.A., 1305 W 23rd Street, MAC S4001-01E, Tempe, Arizona 85282

| Account | Account Name |
|---------|--------------|
| XXXXXX1161 | Michelle A Larmore Jonathan M Larmore |
| XXXXXX2885 | Jonathan M Larmore or Michelle A Larmore |
| XXXXXX5880 | Jonathan M Larmore or Michelle A Larmore |

**Huntington National Bank** Attn: GW4W34 5555 Cleveland Avenue Columbus, OH 43231
Email: CourtOrderProcessing@huntington.com

| Account | Account Name |
|---------|--------------|
| | Jonathan Larmore |

**Brokerage Accounts for Larmore**

| Financial Institution | |
|-----------------------|--|
| JP Morgan Securities LLC | |
| City National Securities | |
| TradeStation Securities, Inc | |
| TD Ameritrade, Inc. and TD Ameritrade Clearing, Inc. | |
| Fidelity | |
| SoFi Capital Advisors, LLC | |
| WeBull Financial LLC | |
| Ally Invest Securities f/k/a Ally Invest Group Inc. | |
| Apex Clearing Corporation | |
| Scott Trade | |

| Entities | |
|---|---|
| Morrison Island, LLC | |
| North East Wawassee, LLC | |
| Labalme Trail, LLC | |
| Lutheran Eye Care, LLC | |
| HV Gardens, LLC | |
| AT LC 87, LLC | |
| JML BC G400, LLC | |

## THE FOLLOWING BANK ACCOUNT IS NOT SUBJECT TO THE ASSET FREEZE.

**Park National Bank** Ashley Houston, Research Specialist, Item Processing Department, Research and Adjustments Group, office 740-349-2641, Fax 740-349-3709, 24/7 Care 888-474-PARK
research@parknationalbank.com

| Account | Account Name |
|---|---|
| XXXXXX7227 | Jonathan M Larmore |

2



EXHIBIT C

| | |
|---|---|
| Securities and Exchange Commission, | Case No.: CV-23-2470-PHX-DLR |
|         Plaintiff, | |
|       v. | **STIPULATION AND [PROPOSED] ORDER** |
| Jonathan Larmore; ArciTerra Companies, LLC; ArciTerra Note Advisors II, LLC; ArciTerra Note Advisors III, LLC; ArciTerra Strategic Retail Advisors, LLC; Cole Capital Funds, LLC. | |
|         Defendants, and | |
| Michelle Larmore; Marcia Larmore; CSL Investments, LLC; MML Investments, LLC; Spike Holdings, LLC; and JMMAL ArciTerra Companies, LLC; ArciTerra Note Advisors II, LLC; ArciTerra Note Advisors III, LLC; ArciTerra Strategic Retail Advisors, LLC Investments, LLC. | |
|         Relief Defendants. | |

**STIPULATION**

The plaintiff Securities and Exchange Commission ("SEC"), Defendants Jonathan M. Larmore ("Larmore"), ArciTerra Companies, LLC ("ArciTerra"), ArciTerra Note Advisors II, LLC ("Fund II Advisors"), ArciTerra Note Advisors III, LLC ("Fund III Advisors"), and ArciTerra Strategic Retail Advisor, LLC ("ASR Advisor") (collectively "ArciTerra Defendants"), and the Intervenors identified in the Schedule attached hereto ("Intervenors"), together referred to as the "Stipulation Parties," hereby stipulate and agree as follows:

1. The Intervenors do not object, and the ArciTerra Defendants consent, to the appointment by the Court of a receiver in this matter (the "SEC Action Receiver") over the ArciTerra Defendants, along with the known and unknown affiliates of the ArciTerra Defendants *other than*, any affiliates of the ArciTerra Defendants that directly own an interest in real property and are currently defendants in a pending state or federal court foreclosure or receivership action (collectively, the "Excluded Entities"), specifically including, without limitation, those entities identified in the attached Schedule.

2. The pending federal and state court actions with respect to the Excluded Entities  (collectively, the "Excluded Actions"), including, without limitation, those actions identified in the attached Schedule, shall be excluded from the scope of any stay of proceedings implemented in this case. The real properties in which the Excluded Entities directly own an interest (together, the "Excluded Properties"), including, without limitation, those properties identified in the attached Schedule and the associated personal property, including bank accounts, shall be excluded from the receivership estate of any SEC Action Receiver.

3. The Intervenors do not object to the SEC Action Receiver's intervention as a party in the Excluded Actions; provided, however, the Intervenors reserve any and all defenses, objections, cross-claims, and counterclaims with respect to the SEC Action Receiver other than as expressly set forth in Paragraph 6 below.

4. Each Intervenor and the SEC Action Receiver shall cooperate in good faith to provide in a timely manner non-privileged information reasonably requested by the SEC

1  Action Receiver, or by the respective Intervenor, with respect to the applicable Excluded
2  Action(s), Excluded Property(ies), or receivership related to such Intervenor; provided,
3  however, that the SEC Action Receiver shall be subject to all of the same restrictions on its
4  ability to receive, request, and disclose information that apply to the Excluded Entities under
5  orders entered in the Excluded Actions or under law applicable in those jurisdictions.

6       5.     Each Intervenor shall provide sufficient notice to the SEC Action Receiver
7  before any sheriff's sale, trustee's sale, auction sale, or other disposition of any Excluded
8  Property in which that Intervenor holds an interest. For the avoidance of doubt, 30 days'
9  advance notice of any disposition of Excluded Property shall be sufficient for purposes of
10  this Paragraph 5.

11       6.     Intervenors specifically consent to the SEC Action Receiver's intervention in
12  the Excluded Actions for the limited purpose of asserting the right to receive any
13  distributions to which the Excluded Entities would otherwise be entitled under applicable
14  law, and to any request by the SEC Action Receiver to hold funds that would otherwise be
15  distributed to the Excluded Entities with the clerk of the court, in escrow, or otherwise
16  segregated pending further order of this Court. The rights of the SEC Action Receiver set
17  forth in this Paragraph 6 are in addition to those rights of the SEC Action Receiver set forth
18  in Paragraph 3 above.

19       7.     With respect to ATA Plaza OK, LLC (the "Tulsa Entity"), an Affiliate of the
20  ArciTerra Defendants, and the real property that it owns, which has the municipal address of
21  8156 S. Lewis Ave, Tulsa, Oklahoma 74137 (the "Tulsa Property"), the Stipulation Parties
22  agree that: (a) secured lender and Intervenor U.S. Bank National Association, as Trustee for
23  the Benefit of the Holders of the M360 2021-CRE3 Notes ("Tulsa Lender"), shall file a
24  foreclosure and receivership proceeding against the Tulsa Entity and Tulsa Property on or
25  before December 23, 2023; (b) the foreclosure and receivership pleadings shall reference this
26  proceeding, and the proposed order seeking the appointment of a receiver shall expressly
27  reference this proceeding and shall be subject to the rights and restrictions provided for and
28  in favor of SEC and the SEC Action Receiver; (c) SEC and the SEC Action Receiver shall

1  not contest such proceeding, provided, that Tulsa Lender and any receiver appointed in such

2  proceeding ("Tulsa Receiver") shall abide by this Stipulation; and (d) to the extent a court

3  enters an order appointing a receiver over the Tulsa Property and/or the Tulsa Borrower, the

4  appointment of Tulsa Receiver shall be subject to the terms of this order.

5

6  SO STIPULATED.

7

8  Dated:  December 20, 2023                          /s/Neal Jacobson
                                                      Neal Jacobson
9                                                     Attorney for Plaintiff SECURITIES AND
                                                      EXCHANGE COMMISSION
10

11
                                                      /s/Seth Waxman
12                                                    Seth Waxman
13                                                    Attorney for Defendants Jonathan Larmore;
                                                      ArciTerra Companies, LLC; ArciTerra Note
14                                                    Advisors II, LLC; ArciTerra Note Advisors
                                                      III, LLC; and ArciTerra Strategic Retail
15                                                    Advisors, LLC
16

17                                                    /s/ Paul Mackowski
18                                                    Paul D. Mackowski
                                                      Amundsen Davis, LLC
19                                                    201 North Illinois Street, 14th Floor
                                                      Indianapolis, IN 46204
20                                                    Attorney for Receiver, Martha Lehman
21

22                                                    /s/ Julie Camden
23                                                    Julie A. Camden
                                                      Camden & Meridew, P.C.
24                                                    10412 Allisonville Road, Suite 200
                                                      Fishers, IN 46038
25                                                    Attorney for Circle City Outdoor Living
26                                                    LLC, Crew Enterprises LLC, Dream
                                                      Construction LLC, Indy Asphalt Appeal
27                                                    LLC, and Styner LLC
28

[PROPOSED] ORDER                    4                CASE NO. CV-23-2470-PHX-DLR

/s/Robert Warzel
Robert Mark Warzel
Spencer Fane LLP
2415 E Camelback Rd., Ste. 600
Phoenix, AZ 85016-4251

-and-

Scott A. Wissel
Lewis Rice LLC
1010 Walnut, Suite 500
Kansas City, MO 64106
*Attorneys for Alliant Credit Union*


/s/Bradley Drell
Bradley L Drell
Gold Weems Bruser Sues & Rundell APLC
2001 MacArthur Dr.
Alexandria, LA 71301
*Attorney for First Guaranty Bank*


/s/ Kyle Hirsch
Kyle Sylvan Hirsch
Bryan Cave Leighton Paisner LLP -
Phoenix, AZ
2 N Central Ave., Ste. 2100
Phoenix, AZ 85004-4406
*Attorney for M360 WH-2 FL Seller LLC and
U.S. BANK NATIONAL ASSOCIATION, as
Trustee for the benefit of the Holders of the
M360 2021-CRE3 Notes*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/ Jason DeJonker
Jason J. DeJonker
William Silas Hackney
Bryan Cave Leighton Paisner LLP
161 N. Clark St., Ste. 4300
Chicago, IL 60601
*Attorneys for Midland Loan Services, a division of PNC Bank, N.A., as special servicer for U.S. BANK NATIONAL ASSOCIATION, as Trustee for the Benefit of the Holders of the M360 2021-CRE3 Notes*

/s/David Audley
David Audley
Chapman & Cutler LLP - S Canal St. Chicago
320 S Canal St., Ste. 2700
Chicago, IL 60606
*Attorney for UMB Bank, N.A., as Trustee of the Forum (Louisville, KY) Ground Lease Backed Pass-Through Trust and as Trustee of the Mauna Lani (Kamuela, HI) Group Lease Backed Pass-Through Trust*

/s/ Jonathan Sundheimer
Jonathan Sundheimer
Barnes & Thornburg LLP
11 S. Meridian St.
Indianapolis, IN 46204
*Attorney for Wells Fargo Bank, National Association, as Trustee, for the Benefit of the Holders of Benchmark 2018-B7 Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2018-B7*



1

2

3

4

5

6

7

8

9   **SO ORDERED.**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/ Jean-Jacques Cabou
Jean-Jacques Cabou
Perkins Coie LLP
2901 N Central Ave., Ste. 2000
Phoenix, AZ 85012
*Attorney for Wilmington Trust, National*
*Association, as Trustee for the Benefit of the*
*Registered Holders of JPMBB Commercial*
*Mortgage Securities Trust 2015-C33,*
*Commercial Mortgage Pass-Through*
*Certificates, Series 2015-C33*

# SCHEDULE TO STIPULATION

**Excluded Action**:  *Wilmington Trust v. AT Jefferson Center FW IN Owner, LLC, et al.*, pending in Allen County, Indiana, Superior Court as Case No. 02D03-2307-MF-000225

| Excluded Entities | Excluded Properties |
|---|---|
| AT Jefferson Center FW IN Owner, LLC | 6723 W. Jefferson Blvd., Fort Wayne, IN |
| AT Lima Plaza FW IN Owner, LLC | 6417 Lima Road, Fort Wayne, IN |
| AT Max FW IN Owner, LLC | 1415 W. Dupont Road, Fort Wayne, IN |
| AT Pine Valley FW IN Owner, LLC | 1125 E. Dupont Road, Fort Wayne, IN |
| AT Portland Commons IN Owner, LLC | 1013 W. Votaw Street, Portland, IN |

**Excluded Action**:  *First Guaranty Bank v. Larmore, et al.*, pending in the United States District Court for the Western District of Louisiana as Case No. 5:23-cv-00683 (W.D. La.)

| Excluded Entities | Excluded Properties |
|---|---|
| AT Wheatland Naperville IL, LLC | 3124-3224 S Route 59 Naperville, IL |
| AT Briargate IL, LLC | 454 & 456-464 Redington Dr, South Elgin, IL; and 465 Briargate Dr, South Elgin, IL |
| AT Belleville Crossing IL – Inline, LLC | 5875-5701 Belleville Crossing Street, Belleville, IL and 5551-5531 Belleville Crossing Street, Belleville, IL |
| AT Forum Louisville KY II, LLC | 3124-3224 S Route 59 Naperville, IL; Leasehold on 150-300 N Hurstbourne Parkway, Louisville, KY and on 0.806 +/- acres out Parcel 150-300 N Hurstbourne Parkway, Louisville, KY |
| Arciterra USB Rochester MN, LLC | 2665 Commerce Dr, NW Rochester, MN |
| AT Bloomington IL, LLC | 2243 Westgate Dr, Bloomington, IL |

**Excluded Actions**: *Wells Fargo Bank, National Association, as Trustee, v. AT Castleton IN Owner II, LLC et al.*, pending in Marion County, Indiana, Superior Court as Cause No. 49D01-2312-MF-046494 (formerly 49D06-2312-MF-046494)

*Circle City Outdoors et al. v. Arciterra Companies, LLC et al.*, pending in Hamilton County, Indiana, Superior Court as Cause No. 29D02-2305-PL-004542

*Circle City Outdoors et al. v. Arciterra Companies, LLC et al.*, pending in Hamilton County, Indiana, Superior Court as Cause No. 29D07-2311-PL-10935

*In re AT Castleton IN Owner II, LLC*, pending in the United States Bankruptcy Court for the Southern District of Indiana as Case No. 23-05511-JJG-11

*In re ArciTerra Vermont Indianapolis IN, LLC*, pending in the United States Bankruptcy Court for the Southern District of Indiana as Case No. 23-05536

*In re Arciterra Westgate Indianapolis IN II, LLC*, pending in the United States Bankruptcy Court for the Southern District of Indiana as Case No. 23-05522-JJG-11

*In re AT Plainfield Village IN II, LLC*, pending in the United States Bankruptcy Court for the Southern District of Indiana as Case No. 23-05519-JJG-11

*In re ArciTerra Noble West Noblesville IN, LLC*, pending in the United States Bankruptcy Court for the Southern District of Indiana as Case No. 23-05540- JJG-11

| **Excluded Entities** | **Excluded Properties** |
|---|---|
| AT Castleton IN Owner II, LLC | 8310-8430 and 8440-8540 Castleton Corner Drive, Indianapolis, Indiana 46250 |
| Castleton Corner Owners Association, Inc. | [Non-ArciTerra entity being listed in an abundance of caution] Assets owned by CCOA and held in conjunction the Castleton Corner Shopping Center as set forth in the Declaration of Development Standards, Covenants and Restrictions for Castleton Corner, as recorded with the Recorder of Marion County, Indiana on November 20, 1981 |
| AT Castleton IN Owner, LLC | All assets |
| AT Altus Echelon IN, LLC | 5252 East 82nd Street, Indianapolis, Indiana 46250 |
| ArciTerra Michigan Road Indianapolis IN, LLC | 8320 - 8350 N. Michigan Road Indianapolis, Indiana 46268 |

| Excluded Entities | Excluded Properties |
|---|---|
| ArciTerra Noble West Noblesville IN, LLC | 14753 Hazel Dell Crossing, 14741 Hazel Dell Crossing, and 14765 Hazel Dell Crossing, Noblesville, Indiana 46062 |
| AT Plainfield Village IN, LLC | Commercial Vacant Land located adjacent to 160 Plainfield Village Drive, Plainfield, Indiana 46168 |
| AT Plainfield Village IN II, LLC | 160 Plainfield Village Drive, Plainfield, Indiana 46168 |
| ArciTerra Vermont Indianapolis IN, LLC | 120 East Vermont Street and 123 East Michigan Street, Indianapolis, Indiana 46204 |
| ArciTerra Westgate Indianapolis IN II, LLC | 5103-5173 West Washington Street, Indianapolis, Indiana 46241 |

**Excluded Actions**: *UMB Bank, N.A. v. JB Forum Land, LLC, et al.,* pending in the United States District Court for the Western District of Kentucky as Case No. 23-CV-575

*M360 v. AT ML Leasehold HI, LLC, et al.,* pending in the Circuit Court of the Third Circuit of the State of Hawaii in Civil No. 3 CCV-23-259

| Excluded Entities | Excluded Properties |
|---|---|
| JB Forum Land, LLC; AT Forum Louisville KY II, LLC | 150-300 N Hurstbourne Parkway, Louisville, KY |
| JB ML Land HI, LLC; AT ML Leasehold HI, LLC | 68-1330 Mauna Lani Drive, Kamuela, Hawai'i 96743 |

**Excluded Action**:  *TBD*

| Excluded Entities | Excluded Properties |
|---|---|
| ATA Plaza OK, LLC | 8156 S. Lewis Ave, Tulsa, OK 74137 |

**Excluded Action**:  *Alliant Credit Union v. Arciterra Olathe Pointe Olathe KS, LLC,* pending in the District Court of Johnson County, Kansas, in Case No. 23CV05137

| Excluded Entities | Excluded Properties |
|---|---|
| Arciterra Olathe Pointe Olathe KS, LLC | Olathe Pointe Shopping Center, located generally at the southeast corner of the |

| Excluded Entities | Excluded Properties |
|---|---|
| | intersection of West 119th Street and South Black Bob Road, Olathe, Kansas 66062 |

**Excluded Action**: *CommunityAmerica Credit Union v. JB Olathe Outlot 2, LLC,* pending in the District Court of Johnson County, Kansas, in Case No. 23CV03136

| Excluded Entities | Excluded Properties |
|---|---|
| JB Olathe Outlot 2, LLC | 11911 S. South Black Bob Road, Olathe, Kansas 66062 |

**Excluded Action**: *Alliant Credit Union v. Arciterra Noble West Noblesville IN, LLC,* pending in Hamilton County, Indiana, Superior Court 2 in Case No. 29D02-2308-MF-007315.

| Excluded Entities | Excluded Properties |
|---|---|
| Arciterra Noble West Noblesville IN, LLC | 14753 Hazel Dell, Noblesville, Indiana 46062 |

**Excluded Actions**: *U.S. Bank National Association, as Trustee for the benefit of the Holders of the M360 2021-CRE3 Notes v. ATA Fishville FL, LLC, et al.,* pending in the 20th Judicial Circuit Court for Charlotte County, Florida, in Case No. 23-002446-CA

| Excluded Entities | Excluded Properties |
|---|---|
| ATA Fishville FL, LLC; JB Fishville Harbor Land, LLC, and JB Fishville Retail Land, LLC (Florida Foreclosure Matter) | 1200 W. Retta Esplanade, Punta Gorda, FL 33950 |

# EXHIBIT D

## EXHIBIT D

| Plaintiffs | Named Defendant(s)[1] | Court | Case No. |
|---|---|---|---|
| Naida E. Arcenas | Tommy E. Bolton | Circuit Court of the 20th Judicial Circuit, Charlotte County, Florida | 23-CA-612 |
| James F. Wilson Living Revocable Trust of James F. Wilson | M/Y BBella, Official Number 1290829 | E.D. VA | 23-00441 |
| Meadows Bank | AT New West Clifton Co, LLC | District Court of Mesa County, Colorado | 2023CV030280 |
| Community America Credit Union | JB Olathe Outlot 2 LLC | District Court of Johnson County, Kansas | 23CV03136 |
| 1000 West Marion LLC | 1000 West Marion PG FL, LLC; and Jonathan M Larmore | Circuit Court of the 20th Judicial Circuit, Charlotte County, Florida | 23001868CA |
| TMI Trust Company | ArcitTerra Note Fund II, LLC; ArciTerra Note Fund III, LLC; ArciTerra Reit Advisors, LLC; ArciTerra Note Advisors II, LLC; ArciTerra Whitefish Advisors, LLC; CSL Investments, LLC; ArciTerra Note Fund II, Investment Company LLC; and ArciTerra Note Funds III, | Superior Court of Maricopa County, Arizona | CV2023-008887 |

---

[1] The actions are stayed only against Receivership Entities and Receivership Assets.

|  | Investment Company, LLC |  |  |
|---|---|---|---|
| Conroad Associates, L.P. | Castleton Corner Owners Association, Inc.; AT Castleton In Owner, LLC; AT Castleton In Association Manager, LLC; ArciTerra Companies, LLC; Jonathan M Larmore; Crystal Scudder; and James C. Shook, Jr. | Indiana Southern District Court | 1:22-cv-00750 |
| UMB Bank, N.A. | JML BC G400, LLC; Larmore IRR Life Insurance Trust; and Jonathan M. Larmore | District Court of Dallas County, Texas | DC-23-07370 |
| 8350 Michigan Rd | ArciTerra Michigan Road Indianapolis IN, LLC | Marion County Public Health Department | HSG23-01952 |
| B. Brad and Monica Mason TIC; Diana K. Hamilton; and John F. Cardarelli | Jonathan M. Larmore; Michelle A. Larmore; Marsha M. Larmore; Blaine D. Rice; Andrea Thompson; Kevin L. Gulbranson; Robert F. Crook; Arciterra Strategic Income Corporation - Belleville Crossing, IL; and ArciTerra Companies, LLC | Illinois Southern District | 3:23cv01785 |

| Conroad Associates, L.P. | Castleton Corner Owners Association, Inc. and McKinley, Inc. | Superior Court of Marion County, Indiana | 49D01-1612-PL-044978 |
|---|---|---|---|
| Diversified Investment Managed Capital Group, L.P. | Wheatland Marketplace Lot 7 Co. | Circuit Court of the 12th Judicial Circuit, Will County, Illinois | 22CH000043 |
| Echo Properties | ATA Plaza OK LLC | District Court of Tulsa County, Oklahoma | CJ-2023-262 |
| Overturf Law F/K/A Overturf Fowler LLP | AT Altus Echelon IN, LLC | Superior Court of Hamilton County, Indiana | 29D02-2307-CC-006552 |
| AT Castleton IN Owner, LLC; AT Castleton IN Owner II, LLC | Castleton Shopping Center, LLC | Indiana Commercial Court | 49D01-2107-PL-024537 |
| Price Edwards & Company, LLC | ATA Plaza OK LLC | District Court of Tulsa County, Oklahoma | CJ-2023-1765 |
| Regal Restoration LLC | Araphoe County Public Trustee; AT Seven Hills Aurora Co II , LLC; City of Aurora; Grass River Real Estate Credit Partners; M360 2019 Cre2 Ltd; Mcreif Subreit LLC; Wells Fargo Bank NA; and Yam Capital III, LLC | District Court of Araphoe County, Colorado | 2023CV30603 |
| N/A | ArciTerra BP Olathe KS LLC | Board of Tax Appeals of the State of Kansas | 2018-3350-EQ to 2018-3352-EQ; 2019-3796-EQ to 2019-3798-EQ; 2020-4077-EQ to 2020-4079-EQ; and 2021-3856-EQ to 2021-3858-EQ |

Case 2:23-cv-02470-DLR   Document 77   Filed 12/21/23   Page 49 of 49

| U.S. Bank National Association, as the trustee for the benefit of the Holders of the M360 2021-CRE3 Notes | ATA Fishville FL, LLC; JB Fishville Harbor Land, LLC; JB Fishville Retail Land, LLC; Yam Capital LLC; ATFL Construction LLC; BOP Fishermen's Village, LLC | Circuit Court of the 20th Judicial Circuit, Charlotte County, Florida | 23-002446-CA |
|---|---|---|---|
| Michelle Larmore | Jonathan Larmore and all ArciTerra entities | Maricopa Superior Court, Arizona | CV2023-6422 |
| Front Range Patrol | At Seven Hills Aurora Co. II, LLC | Arapahoe County Court, Colorado | 23C038802 |
| City of Danville | A.T.P.T. Danville IL II., LLC | Danville Administrative Court, Illinois | 230000304 |
| Providence Bank and Trust | Belleville IL Outlot 6, LLC | Circuit Court of St. Clair County, Illinois, 12th District | 23FC0230 |
| Gladiator Roofing & Restoration LLC | Arciterra Group, LLC | Marion County Superior Court, Indiana | 49D06-2306-PL-023191 |
| The Cleaning Source, LLC | ArciTerra Noble West Noblesville IN and Alliant Credit Union | Superior Court of Hamilton County, Indiana | 29D03-2304-CC-003922 |

**EXHIBIT C**

Temporary Restraining Order

1
2
3
4
5
6
7
8

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States Securities and Exchange Commission, | No. CV-23-02470-PHX-DLR |
| Plaintiff, | **TEMPORARY RESTRAINING ORDER** |
| v. | |
| Jonathan Larmore, et al., | |
| Defendants. | |

WHEREAS this matter has come before this Court upon motion of the Plaintiff U.S. Securities and Exchange Commission ("SEC" or "Plaintiff") for entry of an Order pending the adjudication of Plaintiff's forthcoming Motion for a Preliminary Injunction proving the following relief:

(1)  temporarily restraining (i) Defendants Jonathan M. Larmore ("Larmore"), ArciTerra Companies, LLC ("ArciTerra"), ArciTerra Note Advisors II, LLC ("Fund II Advisors"), ArciTerra Note Advisors III, LLC ("Fund III Advisors"), and ArciTerra Strategic Retail Advisor, LLC ("ASR Advisor"), from violating Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1) and 80b-6(2)]; and (ii) Defendants Larmore and Cole Capital from violating Sections 10(b) and 14(e) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b) and 78n(e)] and Rules 10b-5 and 14e-8 thereunder [17 C.F.R. §§ 240.10b-5 and 240.14e-8] (collectively, "Defendants");

1    (2)    temporarily appointing a receiver in the above-captioned action to protect
2  investors in investment funds (the "ArciTerra Funds") owned or controlled by one or
3  more of Defendants Larmore, ArciTerra, Fund II Advisors, Fund III Advisors and ASR
4  Advisor (collectively, and excluding Larmore, the "Receivership Defendants");

5    (3)    temporarily freezing the assets of the ArciTerra Funds, the Receivership
6  Defendants, and the known and unknown Affiliates of the Receivership Defendants
7  (collectively, the "Receivership Entities"),[1] and preserving those assets of the
8  Receivership Entities held in constructive trust for the Receivership Entities that were
9  fraudulently or improperly transferred out of the Receivership Entities to CSL
10  Investments, LLC ("CSL Investments"), Spike Holdings, LLC ("Spike Holdings"), MML
11  Investments, LLC ("MML Investments"), and JMMAL Investments, LLC ("JMMAL
12  Investments") (collectively, the "Entity Relief Defendants"); and/or may otherwise be
13  includable as assets of the estates of the Receivership Entities (collectively, the
14  "Recoverable Assets");

15    (4)    temporarily staying all pending litigation and temporarily enjoining the
16  filing of any new bankruptcy, foreclosure, receivership, or other actions by or against the
17  Receivership Entities;

18    (5)    ordering a verified accounting by all Defendants and all Relief Defendants;

19    (6)    providing that the parties may take expedited discovery in preparation for a
20  preliminary injunction hearing;

21    (7)    prohibiting Defendants from destroying, altering, or concealing documents;
22  and

23    (8)    requiring all Defendants and Relief Defendants to show cause why this
24  order should not continue until resolution of the merits of the litigation.

25

26    [1] For purposes of this Order, the term "Affiliate" has the meaning ascribed to it in
27  Rule 405 of the Securities Act of 1933, 17 C.F.R. §230.405 ("An affiliate of, or person
   affiliated with, a specified person, is a person that directly, or indirectly through one or
28  more intermediaries, controls or is controlled by, or is under common control with, the
   person specified."). A non-exhaustive list of Receivership Entities is attached as Exhibit
   A to this Order.

- 2 -

1     The Court has considered the Complaint filed by Plaintiff; Plaintiff's *ex parte*
2  motion for a temporary restraining order, the appointment of a receiver, asset freezes, and
3  other relief, including Plaintiff's supporting memorandum of law and supplemental
4  memorandum of points and authorities, the Declarations of Michael Foley and Heather E.
5  Marlow and the exhibits attached thereto. The Court has also considered the Opposition
6  of Defendants and the Limited Opposition of Intervenors.

7     Based upon the foregoing, the Court finds that a proper showing, as required by
8  Section 21(d) of the Exchange Act and Section 209(c) of the Advisers Act, has been
9  made for the relief granted herein, for the following reasons (a separate order addresses
10  the SEC's request for appointment of a receiver, anti-litigation injunction, and asset
11  freezes):

12     1.     It appears from the evidence presented that (i) Defendants Larmore, Fund II
13  Advisors, and Fund III Advisors, have violated, and unless temporarily restrained, will
14  continue to violate, Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-
15  6(1) and 80b-6(2)]; (ii) Defendants Larmore, ArciTerra, and ASR Advisor have aided and
16  abetted violations of, and unless temporarily restrained, will continue to aid and abet
17  violations of, Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and
18  80b-6(2)]; and (iii) Defendants Larmore and Cole Capital have violated, and unless
19  temporarily restrained, will continue to violate, Sections 10(b) and 14(e) of the Exchange
20  Act [15 U.S.C. §§ 78j(b) and 78n(e)] and Rules 10b-5 and 14e-8 thereunder [17 C.F.R.
21  §§ 240.10b-5 and 240.14e-8].

22     2.     It appears that an order requiring Defendants and Relief Defendants to
23  provide a verified accounting of their assets, including the use of the Receivership
24  Entities' assets, is necessary to effectuate and ensure compliance with the freeze imposed
25  on their assets and to locate assets for the benefit of investors.

26     3.     It appears that expedited discovery is necessary to aid in the preparation for
27  any hearing on conversion of the TRO to a preliminary injunction.

28

- 3 -

4.    It appears that an order preventing the destruction, alteration or concealment of relevant documents is necessary.

5.    This Court has jurisdiction over the subject matter of this action and over Defendants, and venue properly lies in this District.

6.    There is good cause to schedule the hearing for preliminary injunction on February 27, 2023, because of the complex nature of the case, the schedule of the parties, the recent retention of counsel for Defendants, and the consent of the Defendants.

NOW, THEREFORE,

**I.**

**IT IS HEREBY ORDERED** that, pending a hearing and determination of Plaintiff's Motion for a Preliminary Injunction, Defendants Larmore, ArciTerra, ASR Advisor, Fund II Advisors, and Fund III Advisors are temporarily restrained and enjoined from violating, directly or indirectly, Section 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)], by use of the mails or means and instrumentalities of interstate commerce: (a) with scienter, employing devices, schemes, or artifices to defraud clients or prospective clients; and (b) engaging in transactions, practices, or courses of business which operated as a fraud or deceit upon clients or prospective clients; while acting as investment advisers.

**IT IS FURTHER ORDERED** that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Order by personal service or otherwise: (a) Defendants' officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendants or with anyone described in (a).

**II.**

**IT IS FURTHER ORDERED** that, pending a hearing and determination of Plaintiff's Application for a Preliminary Injunction, Defendants Larmore and Cole Capital are temporarily restrained from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], by

- 4 -

1   using any means or instrumentality of interstate commerce, or of the mails, or of any
2   facility of any national securities exchange, in connection with the purchase or sale of
3   any security:

4         (a)    to employ any device, scheme, or artifice to defraud;

5         (b)    to make any untrue statement of a material fact or to omit to state a material

6               fact necessary in order to make the statements made, in the light of the

7               circumstances under which they were made, not misleading; or

8         (c)    to engage in any act, practice, or course of business which operates or

9               would operate as a fraud or deceit upon any person.

10      **IT IS FURTHER ORDERED** that, as provided in Federal Rule of Civil
11   Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual
12   notice of this Order by personal service or otherwise: (a) Defendants' officers, agents,
13   servants, employees, and attorneys; and (b) other persons in active concert or
14   participation with Defendants or with anyone described in (a).

15                                        **III.**

16      **IT IS FURTHER ORDERED** that, pending a hearing and determination of
17   Plaintiff's Application for a Preliminary Injunction, Defendants Larmore and Cole
18   Capital are temporarily restrained and enjoined from violating Section 14(e) of the
19   Exchange Act [15 U.S.C. § 78n(e)] and Rule 14e-8 [17 C.F.R. § 240.14e-8] promulgated
20   thereunder, in connection with any tender offer or request or invitation for tenders, from
21   engaging in any fraudulent, deceptive, or manipulative act or practice, by: (1) making
22   untrue statements of a material fact or omitting to state material facts necessary in order
23   to make the statements made, in the light of the circumstances under which they were
24   made, not misleading; and (2) engaging in fraudulent, deceptive, or manipulative acts or
25   practices, in connection with a tender offer.

26      **IT IS FURTHER ORDERED** that, as provided in Federal Rule of Civil
27   Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual
28   notice of this Final Judgment by personal service or otherwise: (a) Defendants' officers,

- 5 -

1  agents, servants, employees, and attorneys; and (b) other persons in active concert or
2  participation with Defendants or with anyone described in (a).

3                                         **IV.**

4       **IT IS FURTHER ORDERED** that, pending a hearing and determination of

5  Plaintiff's Application for a Preliminary Injunction, Defendant Larmore and Relief

6  Defendants Marcia Larmore and Michelle Larmore shall file with this Court and serve

7  upon Plaintiff, by no later than **January 26, 2024**, a verified written accounting signed

8  under penalty of perjury, of their assets and their use of the Receivership Entities' assets,

9  by email (sent to hanjo@sec.gov) on Plaintiff's counsel, John Han, Securities and

10 Exchange Commission, 44 Montgomery St., Suite 2800, San Francisco, California

11 94104.

12                                        **V.**

13      **IT IS FURTHER ORDERED** that discovery in advance of a hearing on

14 Plaintiff's Application for a Preliminary Injunction is expedited as follows: pursuant to

15 Rules 26, 30, 34, and 45 of the Federal Rules of Civil Procedure, and without the

16 requirement of a meeting pursuant to Fed. R. Civ. P. 26(f), the parties may (unless

17 otherwise agreed by the parties):

18      (1)    Take depositions, subject to seven (7) calendar days' notice by email, or
19             otherwise;

20      (2)    Obtain the production of documents from parties within fourteen (14)
21             calendar days from service by email, or by means that provide actual
22             notice, of a request or subpoena;

23      (3)    Obtain the production of documents from third-parties, within fourteen (14)
24             calendar days from service by email, or by means that provide actual notice
25             of a request or subpoena from any persons or entities, including non-party
26             witnesses;

27      (4)    Make service of any discovery requests, notices, or subpoenas by email,
28             personal service, facsimile, overnight courier, or first-class mail on an

                                        - 6 -

individual, entity, or the individual's or entity's attorney.

(5)   The Parties shall meet and confer regarding expedited discovery and inform the court of any disagreements by January 17, 2024.

**VI.**

**IT IS FURTHER ORDERED** that, pending a hearing and determination of Plaintiff's Motion for a Preliminary Injunction, Defendants, any person or entity acting at their direction or on their behalf, and any other third party, be and hereby are (1) enjoined and restrained from destroying, altering, concealing, or otherwise interfering with the access of Plaintiff and the Receiver to any and all documents, books, and records that are in the possession, custody or control of Defendants, the Receivership Entities, and each of their respective officers, agents, employees, servants, accountants, financial or brokerage institutions, or attorneys-in-fact, subsidiaries, affiliates, predecessors, successors, and related entities, that refer, reflect or relate to the allegations in the Complaint, including, without limitation, documents, books and records referring, reflecting, or relating to Defendants' and Receivership Entities' finances or business operations, or the offer, purchase, or sale of securities and the use of proceeds therefrom; and (2) ordered to provide all reasonable cooperation to the Receiver in carrying out his duties set forth herein.

**VII.**

**IT IS FURTHER ORDERED** that this Order shall be, and is, binding upon Defendants and Relief Defendants, and each of their respective officers, agents, servants, employees, attorneys-in-fact, subsidiaries, affiliates, and those persons in active concert or participation with them who receive actual notice of this Order by personal service, facsimile service, or otherwise.

**VIII.**

**IT IS FURTHER ORDERED** that, for good cause and with the consent of the Defendants, Plaintiff, each Defendant, and each Relief Defendant or their attorneys shall appear before this Court at 9:00 o'clock, a.m., on the 27th day of February, 2024, in

- 7 -

1    Courtroom 606 of the United States Courthouse, Phoenix, Arizona, to show cause, if any
2    exists, why this Court should not enter a preliminary injunction extending the temporary
3    restraining order, appointment of receiver, asset freeze, and other relief granted in this
4    Order until a final adjudication on the merits may be had. Plaintiffs shall file by ECF its
5    motion for preliminary injunction by February 15, 2024. Defendants and Relief
6    Defendants shall file any oppositions to the motion for preliminary injunction by
7    February 21, 2024. The Plaintiff shall file any reply by February 23, 2024. This Order
8    shall remain in full force and effect pending further order of the Court.

9        **SO ORDERED.**

10       Dated this 21st day of December, 2023.

14                                           Douglas L. Rayes
15                                           United States District Judge

- 8 -

# EXHIBIT A

## EXHIBIT A

## RECEIVERSHIP ENTITIES

1000 WEST MARION PG FL, LLC
1921 GALLATIN PIKE NASHVILLE TN, LLC
2006 OPERATING PARTNERSHIP, L.P.
2513 E NORTH STREET KENDALLVILLE IN, LLC
412 CROSS OAKS MALL PLAINWELL ML, LLC
5339 ELVIS PRESLEY BLVD. MEMPHIS TN, LLC
5450 US HIGHWAY 80 EAST PEARL MS, LLC
60 COLONIAL PROMENADE PARKWAY ALABASTER AL, LLC
601 RETTA FL, LLC
601 TRENTON ROAD MCALLEN TX, LLC
613 RETTA FL, LLC
700 NORTH GRAND AVENUE MT. PLEASANT, 1A, LLC
751W RETTA ESPLANDE FL, LLC
752 SOUTH ANDY GRIFFITH PARKWAY MT AIRY NC, LLC
7525 PINE VALLEY LANE OWNER, LLC
8001 VAUGHN ROAD MONTGOMERY AL, LLC
81 JAMESON LANE GREENVILLE AL, LLC
880 W MARION AVE FL, LLC
900 WEST MARION AVENUE FL, LLC
ALOHA POP UP PRODUCTIONS, LLC
ARCITERRA AA BARBOURVILLE KY, LLC
ARCITERRA AA LINCOLN NE, LLC
ARCITERRA AA MANISTEE ML, LLC
ARCITERRA AA PAPILLION NE, LLC
ARCITERRA AA PEARL MS, LLC
ARCITERRA AA THEODORE AL, LLC
ARCITERRA AA WEST LIBERTY KY, LLC
ARCITERRA AZ SLIDELL LA, LLC
ARCITERRA AZ TEMPLE GA, LLC
ARCITERRA AZ WILLIS TX, LLC
ARCITERRA BELL YORK SC, LLC
ARCITERRA BP OLATHE KS, LLC
ARCITERRA CH NEW ORLEANS LA, LLC

ARCITERRA COMMERCIAL PROPERTY REIT, LP
ARCITERRA COMMERICAL PROPERTY REIT, INC.
ARCITERRA COMPANIES, LLC
ARCITERRA CV LAFAYETTE LA, LLC
ARCITERRA CV TARPON SPRINGS FL, LLC
ARCITERRA DESIGN, LLC
ARCITERRA DG CAMPBELLSVILLE KY, LLC
ARCITERRA DG GREENVILLE KY, LLC
ARCITERRA DG JUNCTION CITY KY, LLC
ARCITERRA DG MEMPHIS TN, LLC
ARCITERRA DG NORTH BEND OH, LLC
ARCITERRA DG RAVENNA KY, LLC
ARCITERRA DG SHEPHERDSVILLE KY, LLC
ARCITERRA DG SOUTH CHARLESTON OH, LLC
ARCITERRA DG WISTER OK, LLC
ARCITERRA DKS GRAND CHUTE WL, LLC
ARCITERRA FD BOWMAN SC, LLC
ARCITERRA FD EHRHARDT SC, LLC
ARCITERRA FD GREELEYVILLE SC, LLC
ARCITERRA FD PAXVILLE SC, LLC
ARCITERRA FD TUBERVILLE SC, LLC
ARCITERRA FESTIVAL MONTGOMERY AL, LLC
ARCITERRA GC JOHNSON CITY NY, LLC
ARCITERRA GREYSTONE HOOVER AL, LLC
ARCITERRA GROUP, LLC
ARCITERRA HD HENDERSONVILLE TN, LLC
ARCITERRA HD MCALLEN TX, LLC
ARCITERRA KLS JENSEN BEACH FL, LLC
ARCITERRA KLS WARSAW IN, LLC
ARCITERRA KLS WAUSAU WL, LLC
ARCITERRA MICHIGAN ROAD INDIANAPOLIS IN, LLC
ARCITERRA MOV GAL GODDARD KS, LLC
ARCITERRA MOV GAL PARK CITY KS, LLC
ARCITERRA MW NASHVILLE TN, LLC
ARCITERRA NATIONAL REIT, INC.
ARCITERRA NATIONAL REIT, LP
ARCITERRA NOBLE WEST NOBLESVILLE 1N, LLC

ARCITERRA NOTE ADVISORS II, LLC
ARCITERRA NOTE ADVISORS III, LLC
ARCITERRA NOTE FUND II LLC
ARCITERRA NOTE FUND III LLC
ARCITERRA NS INVESTMENT CO.
ARCITERRA OFF PEP PEARL MS, LLC
ARCITERRA OLATHE POINTE OLATHE KS LLC
ARCITERRA OPPORTUNITY FUND I, LLC
ARCITERRA OR BATTLE CREEK ML, LLC
ARCITERRA OS MT. PLEASANT IA, LLC
ARCITERRA REAL ESTATE INVESTMENT TRUST, INC.
ARCITERRA REGIONS LAMARQUE TX, LLC
ARCITERRA REIT I MEMBER, LLC
ARCITERRA REIT I MEMBER, LLC
ARCITERRA REIT I MEMBER, LLC
ARCITERRA REIT RSC, LP
ARCITERRA REIT, LP
ARCITERRA SHOPPES AT ALABASTER AL, LLC
ARCITERRA STAR LANCASTER OH, LLC
ARCITERRA STRATEGIC INCOME CORPORATION-BELLEVILLE CROSSING IL
ARCITERRA STRATEGIC RETAIL - SUFFOLK VA, LLC
ARCITERRA STRATEGIC RETAIL ADVISOR, LLC
ARCITERRA STRATEGIC RETAIL ADVISOR, LLC
ARCITERRA STRATEGIC RETAIL REIT, INC.
ARCITERRA STRATEGIC RETAIL-ELYRIA OH, LLC
ARCITERRASTRATEGIC RETAIL-PLAINFIELD VILLAGEUM, LLC
ARCITERRA STRATEGIC RETAIL-PLAINFILED VILLAGE IN, LLC
ARCITERRA STRATEGIC RETAIL-WHEATLAND IL, LLC
ARCITERRA S-W BURTON ML, LLC
ARCITERRA S-W KALAMAZOO ML, LLC
ARCITERRA S-W LORAIN OH, LLC
ARCITERRA USB BISMARK ND, LLC
ARCITERRA USB NEW ALBANY OH, LLC
ARCITERRA USB ROCHESTER MN, LLC
ARCITERRA VERMONT INDIANAPOLIS IN, LLC
ARCITERRA VN CLARKSVILLE TN, LLC ~
ARCITERRA VN COLUMBIA TN LLC

ARCITERRA VN DICKSON TN, LLC
ARCITERRA VZ HOME GA, LLC
ARCITERRA VZ ROME GA, LLC
ARCITERRA WALCENT GREENVILLE AL, LLC
ARCITERRA WALCENT KENDALLVILLE IN, LLC
ARCITERRA WALCENT PLAINWELL ML, LLC
ARCITERRA WESTGAGE INDIANAPOLIS MEMBER, LLC
ARCITERRA WESTGATE INDIANAPOLIS IN II, LLC
ARCITERRA WESTGATE INDIANAPOLIS IN, LLC
ARCITERRA WG HOMETOWN IL, LLC
ARCITERRA WG KILMARNOCK VA, LLC
ARCITERRA WG MILWAUKEE WL, LLC
ARCITERRA WHITEFISH ADVISORS, LLC
ARCITERRA WHITEFISH OPPORTUNITY FUND, LLC
ARCITERRA WM DOUGLASVILLE GA, LLC
ASR REITLP
AT 18 MILE CENTRAL SC, LLC
AT ALTUS CUMBERLAND GA II, LLC
AT ALTUS CUMBERLAND GA, LLC
AT ALTUS CUMBERLAND MEMBER, LLC
AT ALTUS ECHELON IN, LLC
AT ALTUS ROSWELL GA, LLC
AT AUBURN PLAZA IN II, LLC
AT AUBURN PLAZA IN, LLC
AT AUBURN PLAZA MEMBER, LLC
AT BELLEVILLE CROSSING IL-INLINE, LLC
AT BELLEVILLE CROSSING IL-OUTLOTS LLC
AT BLOOMINGTON IL, LLC
AT BOUTTE LA, LLC
AT BRIARGATE IL, LLC
AT BUENA VISTA GA, LLC
AT CANAL WINCHESTER OH, LLC
AT CASTLETON IN ASSOCIATION MANAGER, LLC
AT CASTLETON IN MEMBER II, LLC
AT CASTLETON IN MEMBER, LLC
AT CASTLETON IN MEMBER, LLC
AT CASTLETON IN OWNER II, LLC

AT CASTLETON IN OWNER, LLC
AT CASTLETON IN OWNER, LLC
AT CASTLETON IN OWNER, LLC
AT CEDARTOWN GA OUTLOT, LLC
AT CEDARTOWN GA, LLC
AT CENTERVILLE GA, LLC
AT COLONY FITZGERALD GA LLC
AT CONCORD, LLC '
AT DILLON SC OUTLET, LLC
AT EASTMAN GA II, LLC
AT EASTMAN GA, LLC
AT EASTMAN GA, LLC
AT EASTMAN MEMBER, LLC
AT ELYRIA OH INLINE, LLC
AT ELYRIA OH OUTLOT, LLC
AT FL CONSTRUCTION, LLC
AT FORUM KY MEMBER II, LLC
AT FORUM KY MEMBER, LLC
AT FORUM KY MEMBER, LLC
AT FORUM LOUISVILLE KY II, LLC
AT HL BURLINGTON IAII, LLC
AT HL BURLINGTON IA, LLC
AT HL BURLINGTON MEMBER, LLC
AT JEFFERSON CENTER FW IN OWNER, LLC
AT JEFFERSON CENTER FW IN, LLC
ATJPM LINDENHURST IL, LLC
AT LIMA PLAZA FW IN OWNER, LLC
AT LIMA PLAZA FW IN, LLC
AT LINDENHURST IL, LLC
AT LONGVIEW MEMBER, LLC
AT LONGVIEW OUTLOT NORTHEAST, LLC
AT LONGVIEW OUTLOT WEST, LLC
AT LONGVIEW TXII, LLC
AT LONGVIEW TX, LLC
AT LUBBOCK TX, LLC
AT MAX FW IN OWNER, LLC '
AT MAX FW IN, LLC

AT MAYODAN MEMBER, LLC
AT MAYODAN NCII, LLC
AT MAYODAN NC, LLC
AT MF VEGAS, LLC
AT MIDWAY ELYRIA OH, LLC
AT ML LEASEHOLD HI, LLC
AT ML MANAGEMENT HI LLC
AT MMH HI LLC
AT MT. PLEASANT LOT 2, LLC
AT NEW LENOX IL-GL, LLC
AT NEW LENOX IL- INLINE, LLC
AT NEW LENOX IL-INLINE II, LLC
AT NEW LENOX IL-OUTLOTS, LLC
AT NEW LENOX-IL MEMBER, LLC
AT NEW WEST CLIFTON CO, LLC
AT OLATHE MANAGER, LLC
AT OLATHE MANAGER, LLC
AT PINE VALLEY FW IN OWNER, LLC
AT PINE VALLEY FW IN, LLC
AT PLAINFIELD VILLAGE IN II, LLC
AT PLAINFIELD VILLAGE IN, LLC
AT PLAINFIELD VILLAGE MEMBER, LLC
AT PORTLAND COMMONS IN OWNER, LLC
AT PORTLAND COMMONS IN, LLC
AT PT DANVILLE IL II, LLC
AT PT DANVILLE IL, LLC
AT PT DANVILLE MEMBER, LLC
AT SALEM IL OUTLOT, LLC
AT SALISBURY NC OUTLOT, LLC
AT SANDERSVILLE GA, LLC
AT SEVEN HILLS AURORA CO II, LLC
AT SEVEN HILLS AURORA CO, LLC
AT SEVEN HILLS AURORA CO, LLC
AT SEVEN HILLS AURORA MEMBER, LLC
AT STATESBORO SQUARE GA, LLC
AT SUFFOLK VA2B-2, LLC
AT SUFFOLK VA2B-3, LLC

AT SUFFOLK VA2B-5, LLC
AT SUFFOLK VA 2B-6, LLC
AT SUFFOLK VABWW, LLC
AT SUFFOLK VA SC, LLC
AT SUWANEE DEPOT GA, LLC
AT SWEDEN MEMBER, LLC
AT SWEDEN NY II, LLC
AT SWEDEN NY, LLC
AT SWEEDEN NY OUTLOT, LLC
AT TIFFANY SQUARE ROCKY MOUNT NC, LLC
AT TOWNE SQUARE ROME GA, LLC
ATVILLA PLATTE LA II, LLC
AT VILLA PLATTE MEMBER, LLC
AT VILLE PLATTE LA, LLC
AT WHEATLAND NAPERVILLE IL, LLC
AT WILDWOOD PLAZA MO, LLC
ATA CHERRY CREEK IL, LLC
ATA CYPRESS TOWN CENTER TX, LLC
ATA FISHVILLE FL, LLC
ATA FISHVILLE MANAGEMENT, LLC
ATA FORUM LOUISVILLE KY, LLC
ATA FORUM LOUISVILLE,LLC
ATA HIRAM SQUARE GA, LLC
ATA LANIER FAYETTEVILLE GA II, LLC
ATA LANIER FAYETTEVILLE GA, LLC
ATA LANIER FAYETTEVILLE MEMBER, LLC
ATA MERCADO ST. AUGUSTINE FL, LLC
ATA PALENCIA ST. AUGUSTINE FL, LLC
ATA PLAZA OK, LLC
ATA PRESTON PLAZA KY, LLC
ATA ROGERS BRIDGE GA, LLC
ATA STONE LITHONIA GA, LLC
ATA TRINITY PLACE TN, LLC
ATG REIT RSC, LP
ATR 32, LLC
BPS, L.L.C.
BPS, L.L.C. OF ALABAMA

BELLEVILLE IL OUTLOT 6, LLC
BLACK POINT RD, LLC
BREWHOUSE CENTER COURT, LLC
CASTLETON SHOPPING CENTER MK DISPOSITION, LLC
CASTLETON SHOPPING CENTER MK DISPOSITION, LLC
CHOVIA SHOPS MT AIRY NC, LLC
CSL INVESTMENTS, LLC
COLE CAPITAL FUNDS, LLC
DB COMMERCIAL MANAGEMENT, LLC
FISHVILLE KIOSK MEMBER, LLC
FK TELLURIDE, LLC
FUDGE IS US PG, LLC
FV BUILDING 13, LLC
FV BUILDING 15, LLC
GLENROSA 32, LLC
HARBOURVIEW MARKETPLACE, LLC
HARBOURVIEW STATION WEST, LLC
HELENA STAR MT, LLC
JB FISHVILLE HARBOR LAND LLC
JB FISHVILLE RETAIL LAND LLC
JB FORUM LAND, LLC
JB ML LAND HI, LLC ~
JB OLATHE OUTLOT 2, LLC
JB RE INVESTMENTS, LLC
JB SEVEN HILLS, LLC
JB SEVEN HILLS, LLC
JB TRANSPORTATION, LLC
JBM ACQUIST1ONS LLC
JJ RESTAURANT HOLDINGS, LLC
JMLBC G4, LLC
JML MANAGER, LLC
JML TRUST MANAGER, LLC
LEGAL FLOAT LENDING, LLC
LOUISVILLE RESTAURANT PARTNERS, LLC
LOWER 5629 ROCKRIDGE ROAD, LLC
MML INVESTMENTS, LLC
JMMAL INVESTMENTS, LLC

MONTGOMERY MATTRESS, LLC
MONTGOMERY MATTRESS, LLC
PG HOSPITALITY, LLC
PG WATERFRONT HOSPITALITY, LLC
PT PLAZA, LLC
SAML BAR AND GRILL, LLC
SPIKE HOLDINGS AZ, LLC
STAR MT, LLC
STAR OH, LLC
THE EXCHANGE PLAINWELL ML, LLC
UPPER 5629 ROCKRIDGE ROAD, LLC
VBH PG, LLC
WALCENT ARKADELPHIA AK, LLC
WALCENT ELK/IN, LLC
WALCENT KENDALLVILLE IN, LLC
WALCENT LAWTON OK, LLC
WALCENT MORRILTON AK, LLC
WALCENT NEWC/IN, LLC
WALCENT PLAINWELL ML, LLC
WALCENT SHELBY ML, LLC
WALCENT SHOPS SUWANEE GA, LLC
WALCENT WAYNESBORO MS, LLC
WAWASEE WATERCRAFTS, LLC
WHEATLAND CROSSING OWNERS ASSOCIATION
WHEATLAND MARKETPLACE LOT 7 CONDOMINIUM ASSN.
WHITEFISH OPPORTUNITY FUND, LLC



**Allen G. Kadish**
Archer & Greiner, P.C.
1211 Avenue of the Americas, Suite 2750
New York, NY 10036
212-682-4940 Main
www.archerlaw.com

December 27, 2023

## VIA OVERNIGHT MAIL

United States District Court
Northern District of Illinois
Attn: Clerk of the Court
219 S. Dearborn Street
Chicago, IL 60604

> Re: *Securities and Exchange Commission v. Jonathon Larmore, et al.*
> *U.S. District Court for the District of Arizona, Case No. 23-CV-02470-DLR*
> **Notice of Filing of Complaint and Order Pursuant to 28 U.S.C. §754**

Dear Clerk:

Our firm represents Allen D. Applbaum as Receiver in the above-referenced receivership, pursuant to that certain *Order Appointing Temporary Receiver and Temporarily Freezing Assets and Imposing Litigation Injunction* [ECF No. 77]. Pursuant to 28 U.S.C. §754, the Receiver hereby submits for filing the enclosed:

> **Notice of Filing of Complaint and Order Pursuant to 28 U.S.C. §754,** including:
> Exhibit A – *Complaint* [ECF No. 1],
> Exhibit B – *Order Appointing Temporary Receiver and Temporarily Freezing Assets and Imposing Litigation Injunction* [ECF No. 77], and
> Exhibit C – *Temporary Restraining Order* [ECF No. 78].

Please open a miscellaneous civil case under 28 U.S.C. §754 in your District. Due to the exigency under the statute, please file and we will follow with the filing fee. We also enclose a return envelope for a file-stamped copy of the first page of the Notice.

Please contact the undersigned immediately with any questions. Thank you.

Respectfully,

ALLEN G. KADISH

Enclosures

Voorhees, NJ | Hackensack, NJ | Princeton, NJ | Philadelphia, PA | Harrisburg, PA | Red Bank, NJ | New York, NY | Wilmington, DE | Houston, TX